**SPARTA SURGICAL CORPORATION,**
**Plaintiff–Appellant,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.; NASDAQ Stock Market, Inc., Defendants–Appellees.**

No. 97–15394.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1998.

Decided Nov. 6, 1998.

Timothy G. Atkinson, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Denver, CO, and Ardell Johnson, Korda, Johnson & Wall, San Jose, CA, for plaintiff-appellant.

Douglas R. Cox, Daniel W. Nelson, Gibson, Dunn & Crutcher, Washington, D.C., for defendants-appellees.

Before: HUG, Chief Judge, FERNANDEZ and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

In this appeal we consider what civil remedies are available against a national securities exchange for temporarily de-listing and suspending trading in a stock on the opening day of a public offering. We agree with the district court that defendants are entitled to regulatory immunity, and affirm dismissal of the action.

I

The National Association of Securities Dealers ("NASD") is a non-profit, self-regulatory organization registered pursuant to the Maloney Act amendments to the Securities Exchange Act of 1934 ("Exchange Act"). 15 U.S.C. § 78a *et seq.; see also National Assoc. of Sec. Dealers, Inc.,* 5 SEC 627 (1939). NASD is the only securities association registered with the Securities and Exchange Commission ("SEC") under 15 U.S.C. § 78o–3, and is the primary regulatory body for the broker-dealer industry. It supervises the conduct of its members under the general aegis of the SEC. The Nasdaq Stock Market, Inc. ("NASDAQ") is a wholly owned

NASD subsidiary which processes quotations for most over-the-counter equity trading. NASDAQ is the only exchange which NASD both owns and regulates.

Sparta Surgical Corporation ("Sparta") is a medical products manufacturer and distributor whose stock has been listed and traded on the NASDAQ SmallCap market since 1991. The NASDAQ SmallCap market is a distinct tier of the NASDAQ Stock Market comprised of securities of smaller, "emerging growth" companies. *See NASD Manual* (CCH) at 157; NASD Rule 4200(20). Each tier has its own set of financial requirements that a company must meet for NASDAQ to list its securities.

To effectuate its desire to make a secondary public offering, Sparta filed two listing applications with NASDAQ on February 15, 1995. On March 21, 1995, the SEC declared Sparta's offering effective, prompting Sparta and its underwriter to commence selling shares. Later that morning, NASDAQ delisted Sparta's stock and suspended trading on the offering without explanation. The suspension was lifted the following day, and trading on the offering resumed.

Although the suspension was temporary, Sparta contends that in the world of public offerings and labile investor confidence, the regulatory action and trading hiatus rendered the offering unmarketable. Accordingly, Sparta filed suit in California superior court alleging a variety of state common-law claims, including breach of express and implied contract, breach of the covenant of good faith and fair dealing, gross negligence, intentional misrepresentation, negligent misrepresentation, and interference with economic relations. Defendants removed the action to federal district court. After denying Sparta's remand motion, the district court subsequently dismissed the suit for failure to state a claim upon which relief could be granted.

## II

■ Contrary to Sparta's assertions, the district court had subject matter jurisdiction and properly denied the motion to remand, a decision which we review de novo. *Easton v.*

*Crossland Mortgage Corp.,* 114 F.3d 979, 982 (9th Cir.1997).

■ If a district court lacks subject matter jurisdiction over a removed action, it has the duty to remand it, for "removal is permissible only where original jurisdiction exists at the time of removal or at the time of the entry of final judgment...." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* —— U.S. ——, 118 S.Ct. 956, 966, 140 L.Ed.2d 62 (1998). Under 28 U.S.C. § 1441(a), an action must "be fit for federal adjudication when the removal petition is filed." *Id.* at 965. The existence of federal question jurisdiction is ordinarily determined from the face of the complaint. *Ultramar America Ltd. v. Dwelle,* 900 F.2d 1412, 1414 (9th Cir.1990).

When removed, Sparta sought relief based in part upon NASD's purported violation of its own rules, specifically alleging that:

> The foregoing actions of NASD were in direct violation of its own rules and procedures, including, but not limited to rules regarding the inclusion of stocks for listing as set forth in Schedule D of NASD By-laws, rules regarding the suspension of trading in a stock as set forth in Schedule D, and internal guidelines requiring NASD and its staff to review proposed listings and timely and accurately respond to applicants.

■ Because Sparta's complaint sought relief based upon violation of exchange rules, subject matter jurisdiction was specifically vested in the federal district court under the Exchange Act, which provides in relevant part:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

15 U.S.C. § 78aa.

This section unequivocally "confers exclusive jurisdiction upon the federal courts for

suits brought to enforce the Act or rules and regulations promulgated thereunder." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 370, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *see also Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1313 (9th Cir. 1985).

NASD's association rules govern its decision to list, not to list, or to de-list an offering. Schedule D, ¶ 1805, § 3. Those rules were issued pursuant to the Exchange Act's directive that self-regulatory organizations adopt rules and by-laws in conformance with the Exchange Act. *See* 15 U.S.C. § 78*o*–3(b). With some exceptions not germane to our inquiry, the SEC must approve the rules issued by self-regulatory organizations. *See* 15 U.S.C. § 78s(b). In addition, the SEC "may abrogate, add to, and delete from" rules of a self-regulatory organization as it "deems necessary or appropriate" to insure the fair administration of the organization or to conform the organization's rules to Exchange Act requirements. *See* 15 U.S.C. § 78s(c). The Exchange Act requires self-regulatory organizations to comply not only with the Exchange Act, but also with the association's own rules. *See* 15 U.S.C. § 78s(g)(1).

Because federal courts are vested by 15 U.S.C. § 78aa with the exclusive jurisdiction over actions brought "to enforce any liability or duty" created by exchange rules, the district court properly determined that subject matter jurisdiction existed at the time of removal over Sparta's claims arising from breach of association rules. *See Hawkins v. National Assoc. of Sec. Dealers Inc.*, 149 F.3d 330, 332 (5th Cir.1998).

■ Even if Sparta had not specifically relied upon association rules in its claim for relief, federal question jurisdiction existed. In addition to examining the literal language selected by the plaintiff, the district court must analyze whether federal jurisdiction would exist under a properly pleaded complaint. *Easton*, 114 F.3d at 982. A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under

federal law. *Id.; see also Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir.1996).

Here, although Sparta's theories are posited as state law claims, they are founded on the defendants' conduct in suspending trading and de-listing the offering, the propriety of which must be exclusively determined by federal law. The viability of any cause of action founded upon NASD's conduct in de-listing a stock or suspending trading depends on whether the association's rules were violated. As the district court correctly observed, "[a]ny claim stemming from NASD's decision to de-list an offering is necessarily based on an assumed violation of the rules governing such procedures . . . ." If NASD's actions conformed to the rules, there can be no viable cause of action; if its actions violated the rules, any claim falls under the imperative of 15 U.S.C. § 78aa which grants the federal courts "exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder . . . ." Thus, even though Spara's remaining claims were "carefully articulated in terms of state law," the district court had subject matter jurisdiction. *See Hawkins*, 149 F.3d at 332.

Sparta contests this conclusion, citing *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), for the proposition that federal question jurisdiction cannot lie absent a private right of action to enforce the federal right. *See also Utley v. Varian Assoc.*, 811 F.2d 1279, 1283 (9th Cir.1987). Because there is no private right of action for breach of a self-regulatory organization's rules, *see Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir.1980), Sparta reasons that application of *Merrell Dow* and *Utley* should extinguish federal jurisdiction.

Sparta's argument would have merit if jurisdiction in this case had been solely predicated on 28 U.S.C. § 1331, which was at issue in *Merrell Dow* and *Utley*. However, jurisdiction lies here not under 28 U.S.C. § 1331, but under 15 U.S.C. § 78aa which vests exclusive jurisdiction over claims concerning duties created by exchange rules in the federal courts. Thus, neither *Merrell Dow* nor *Utley* divested the district court of jurisdiction in this instance. Similarly, the rule that

state law claims cannot be alchemized into federal causes of action by incidental reference, *see Easton,* 114 F.3d at 982, has no application when relief is partially predicated on a subject matter committed exclusively to federal jurisdiction. *See Hawkins,* 149 F.3d at 332.

■ *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), and its progeny do not compel a different conclusion. *Caterpillar* held removal improper based upon the presence of a federal question in a defensive argument. *Id.* at 398, 107 S.Ct. 2425. Thus, in *Caterpillar,* the Supreme Court held that the properly presented state law claims should be remanded to state court. However, in *Caterpillar,* the state law claims were not "grounded, either directly or indirectly, upon rights or liabilities created by the collective-bargaining agreement" which was subject to federal jurisdiction. *Id.* at 390, 107 S.Ct. 2425. Rather, the state law claims were founded upon breaches of individual employment contracts not governed by the Labor Management Relations Act. *Id.* at 394, 107 S.Ct. 2425. Here, by contrast, Sparta specifically alleged violation of exchange rules, a matter committed exclusively to federal jurisdiction. When a plaintiff chooses to plead what "must be regarded as a federal claim," then "removal is at the defendant's option." *Id.* at 399, 107 S.Ct. 2425.

■ Finally, Sparta directs our attention to an amended complaint it filed after removal in which most references to exchange rule violations were deleted. This is of no moment to us, however, for jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments. *See Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1488 (10th Cir.1991). Because of this rule, a plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based.

For all these reasons, the district court correctly concluded that subject matter jurisdiction existed at the time of removal, and denied Sparta's remand motion.

## III

After determining it had jurisdiction, the district court dismissed Sparta's complaint because the federal claims were untenable and the remaining claims were subject to NASD's successful immunity defense.

■ It is undisputed, even by Sparta, that a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the Act. *See Jablon,* 614 F.2d at 681. Thus, to the extent that Sparta seeks private relief for NASD or NASDAQ's breach of their own rules, its claims are barred.

■ The district court also properly dismissed Sparta's non-federal claims on the basis of immunity. We agree with this assessment, and hold that a self-regulatory organization is immune from liability based on the discharge of its duties under the Exchange Act.

"[I]mmunity doctrines protect private actors when they perform important governmental functions." *Barbara v. New York Stock Exchange,* 99 F.3d 49, 58 (2d Cir.1996). Accordingly, immunity has been afforded self-regulatory organizations when conducting disciplinary proceedings, *see Austin Mun. Sec., Inc. v. National Ass'n of Sec. Dealers, Inc.,* 757 F.2d 676, 686–93 (5th Cir. 1985), and arbitrating claims, *see Hawkins,* 149 F.3d at 332.

Extending immunity when a self-regulatory organization is exercising quasi-governmental powers is consistent with the structure of the securities market as constructed by Congress. When Congress considered the burgeoning over-the-counter market in the 1930s, it was confronted with two alternatives: a "pronounced expansion" of the SEC, or a system of industry self-regulation with strong SEC oversight. S.Rep. No. 1455, 75th Cong., 3d Sess. 3–4 (1938). Congress chose the latter approach and, with enactment of the Maloney Act, established a system of "cooperative regulation" in the over-the-counter securities market, under which self-regulatory organizations would exercise a primary supervisory role subject to ulti-

mate SEC control.[1] Loss & Seligman, 6 Securities Regulation 2787–90 (3d Ed.1990).

In 1975, Congress amended the Exchange Act to vest more control in the SEC and to bolster the "essential and continuing role of the federal government" in regulating the securities industry. S.Rep. No. 75, 94th Cong., 1st Sess., 22 (1975), U.S.Code Cong. & Admin.News 1975, pp. 179, 201. The legislative history of the 1975 amendments underscored that self-regulatory organizations "are intended to be subject to the SEC's control and have no governmentally derived authority to act independently of SEC oversight." H.R.Rep. No. 123, 94th Cong., 1st Sess., 48–49 (1975).

Thus, the structure of the over-the-counter market vests self-regulatory organizations with regulatory authority on certain issues, subject to SEC oversight. The rules issued by NASD governing listing and de-listing stock offerings were not issued independent of the Exchange Act, but rather in conformance with it, for as we noted in *Jablon,* "the stock exchange rules were not enacted by Congress, but by the exchange acting on authority delegated by Congress." 614 F.2d at 679. The NASD rules, which were approved by the SEC, establish listing guidelines, but also invest in the NASD enormous discretionary authority concerning stock listing and de-listing. As NASD's By–Laws put it: "the Association, therefore, in addition to applying the enumerated criteria ... will exercise broad discretionary authority over the initial and continued inclusion of securities in the NASDAQ System in order to maintain the quality of and public confidence in its markets."

Consistent with their role in regulation of the securities market, self-regulatory organizations have been granted immunity from suit when acting in a quasi-governmental capacity. As the Second Circuit observed in *Barbara:*

> [A]bsolute immunity is particularly appropriate in the unique context of the self-regulation of the national securities exchanges. Under the Exchange Act, the Exchange performs a variety of regulatory functions that would, in other circumstances, be performed by a government agency. Yet government agencies, including the SEC, would be entitled to sovereign immunity for all suits for money damages. *See Sprecher v. Graber,* 716 F.2d 968, 973 (2d Cir.1983); *see also Austin,* 757 F.2d at 692. As a private corporation, the Exchange does not share in the SEC's sovereign immunity, but its special status and connection to the SEC influences our decision to recognize an absolute immunity from suits for money damages with respect to the Exchange's conduct of disciplinary proceedings.

99 F.3d at 59.

Sparta concedes that NASD has immunity when acting in an adjudicatory, prosecutorial, arbitrative or regulatory capacity. However, it argues that in this instance NASD was acting as a market facilitator, and it therefore does not qualify for immunity.

To be sure, self-regulatory organizations do not enjoy complete immunity from suits; it is only when they are acting under the aegis of the Exchange Act's delegated authority that they so qualify. When conducting private business, they remain subject to liability. *Cf. Austin,* 757 F.2d at 692.

However, there are few functions more quintessentially regulatory than suspension of trading. Under the Exchange Act's philosophy of cooperative regulation, NASD is "entrusted with the authority to preserve and strengthen the quality of and public confidence in its market." 59 Fed.Reg. 29834, 29843 (1994). Inclusion of an issue in NASDAQ creates the public expectation that the company meets minimum financial criteria, as well as embracing "integrity and ethical business practices." *Id.* For these reasons, NASD sought and received SEC approval in 1994 to "exercise broad discretionary author-

---

**1.** This was consistent with the regulatory theory of then SEC Chairman William O. Douglas, who somewhat colloquially described his philosophy as "letting the exchanges take the leadership with Government playing a residual role. Government would keep the shotgun, so to speak, behind the door, loaded, well oiled, cleaned, ready for use but with the hope it would never have to be used." W. Douglas, Democracy and Finance 82 (1940).

ity over the initial and continued inclusion of securities in NASDAQ." *Id.*

Thus, contrary to Sparta's view that NASD's role is one simply of a market facilitator bound to exercise salesmanship on behalf of an issuing company, NASD is charged with the duty and responsibility of monitoring its market carefully to protect the investing public. When it acts in this capacity to suspend trading, NASD is performing a regulatory function cloaked in immunity. All of the damage Sparta claims flows from the trading suspension and temporary de-listing. Accordingly, defendants are immune from Sparta's claims.

The case at bar underscores the importance of regulatory immunity. Sparta's common law theories postulate that NASD may make an enforceable private commitment irrespective of its own rules, and be subject to a common law damage suit for its breach. Sparta argues that an association's rules cannot supplant promises or implied contracts made between an exchange and an applicant. A rule permitting recovery under such a theory would allow states to define by common law the regulatory duties of a self-regulatory organization, a result which cannot co-exist with the Congressional scheme of delegated regulatory authority under the Exchange Act.

Sparta also claims a "bad faith" exception to the immunity doctrine, relying on *Brawer v. The Options Clearing Corp.*, 807 F.2d 297, 301 (2d Cir.1986). *Brawer* was not an immunity case; it concerned exceptions to the general rule forfending private rights of action under the Exchange Act. Even in that context, the vitality of that exception in the Second Circuit may be in some doubt. *See Feins v. American Stock Exchange*, 81 F.3d 1215, 1223–24 (2d Cir.1996). More importantly, even if the private right of action analogy were absolute, our circuit does not recognize such an exception. Under *Jablon*, there is no private right of action for violations of exchange rules. *See Jablon*, 614 F.2d at 681.

\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P.

The results of any immunity rule may be harsh. If we take Sparta's complaint at face value, which we must, defendants acted in a capricious, even tartuffian manner which caused Sparta enormous damage. Nonetheless, when Congress elected "cooperative regulation" as the primary means of regulating the over-the-counter market, the consequence was that self-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity.

For these reasons, we affirm the judgment of the district court in its entirety.

AFFIRMED.