**ARCO ENVIRONMENTAL REMEDIATION, L.L.C.,** Plaintiff–Appellant,

v.

**DEPARTMENT OF HEALTH AND ENVIRONMENTAL QUALITY OF THE STATE OF MONTANA; Environmental Protection Agency, Defendants–Appellees.**

No. 99–36033.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 2000

Filed May 24, 2000

---

Kyle A. Gray, Stephen H. Foster, W. Scott Mitchell, Holland & Hart, LLP, Billings, Montana, for the plaintiff-appellant.

Lisa E. Jones, United States Department of Justice, Washington, D.C., for the federal appellees.

Timothy R. Baker, Assistant Attorney General, Helena, Montana, for defendant-appellee State of Montana Department of Environmental Quality.

Before: PREGERSON and D.W. NELSON, Circuit Judges, and MOSKOWITZ,[1] District Judge.

PREGERSON, Circuit Judge:

ARCO Environmental Remediation ("ARCO") brought this suit to obtain from the State of Montana documents pertaining to an environmental cleanup being conducted pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*, and to enjoin closed-door meetings between Montana and the federal Environmental Protection Agency ("EPA"). Filed in Montana state court, the complaint alleges causes of action under Montana law. We must decide the narrow question whether a federal district court has removal jurisdiction over this suit. We have appellate jurisdiction under 28 U.S.C. § 1291 and *Concha v. London*, 62 F.3d 1493, 1506 (9th Cir.1995), and we review de novo the district court's decision denying remand. *See Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir.), *amended by*, 140 F.3d 849 (9th Cir. 1998). Because we find that the district court has no jurisdiction over this case, we reverse.

I

The Clark Fork River Operable Unit ("CFROU") is a Superfund site[2] in Montana's Upper Clark Fork River Basin. CERCLA requires the EPA to determine, for each Superfund site, what is to be cleaned up, the extent of the cleanup, the costs of the cleanup, and how to apportion those costs. The EPA is in the process of preparing a Remedial Investigation/Feasibility Study ("RI/FS") and an ecological risk assessment for the CFROU. The EPA has identified ARCO, plaintiff in this litigation, as a "Potentially Responsible Party" for the CFROU's contamination.[3]

---

1. The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

2. CERCLA requires the President to create a National Priorities List of national hazardous waste sites and to rank each site according to the order of priority for cleanup. *See* 42

U.S.C. § 9605(a)(8)(B). Sites on the National Priorities List are known as "Superfund sites."

3. CERLCA shifts cleanup costs to parties determined to be responsible for the contamination of a Superfund site. *See* 42 U.S.C. § 9607(a).

The EPA and the State of Montana's Department of Health and Environmental Sciences ("DHES")[4] signed a "Cooperative Agreement" under which Montana agreed to assist in the investigation of various Superfund sites, including the CFROU, in exchange for federal funding. In a "Memorandum of Agreement," the EPA and the DHES agreed to exchange information and documents pertaining to the Superfund sites. The Cooperative Agreement sets out the terms of public access to exchanged documents:

> The State will allow public access to its records in accordance with applicable state law. EPA will allow public access to its records in accordance with the procedures established under the Freedom of Information Act (PL 93–502), regulations promulgated pursuant thereto, and Agency guidance. Both parties agree to protect each other's claims for confidentiality, particularly with regard to documents related to pending or ongoing enforcement actions generated by either the State or EPA. The State will ask for EPA concurrence before releasing EPA documents.

The *Memorandum of Agreement* reiterates that the parties "agree to protect each other's claims for confidentiality and exemptions to public release of such exchanged information...."

ARCO has made several attempts to gain access to documents pertaining to the CFROU Superfund site. In 1989, ARCO[5] sued the DHES in Montana state court, seeking from Montana documents pertaining to the Clark Fork River Superfund Sites, including the CFROU. *See State ex rel Atlantic Richfield Co. v. Department of Health and Envtl. Sciences of the State of Montana,* No. CV 89–103–H–CCL. The DHES removed the action to federal court, and ARCO moved to remand. The district court denied the motion to remand, finding that ARCO had engaged in artful pleading to avoid stating a federal claim under CERCLA. Ultimately, ARCO and the DHES settled that action, and their joint stipulation was approved by court order on December 10, 1993. In that stipulation, ARCO agreed to "seek all documents in the possession of the state of Montana ... relating to the four Upper Clark Fork River Superfund Sites" through discovery in CERCLA litigation pending before the United States District Court for the District of Montana.[6]

In October 1998, ARCO filed a request under the federal Freedom of Information Act ("FOIA"), 5 U.S.C. 552 *et seq,* for documents pertaining to a CERCLA-mandated ecological risk assessment for the CFROU Superfund site. The EPA and its FOIA officer denied the request. ARCO has not challenged the denial in federal court.

ARCO is also participating in an administrative proceeding before the Montana Board of Environmental Review which will determine water quality standards for the Clark Fork River.[7] In this capacity, ARCO has sought without success to attend meetings between the EPA and Montana's Department of Environmental Quality ("DEQ") and to obtain the CERCLA-mandated ecological risk assessment for the CFROU.

On June 10, 1999, ARCO filed this action against the DEQ in Montana state court. It did not name the EPA as a defendant.

---

4. The DHES is the predecessor agency to the State of Montana's Department of Environmental Quality, defendant in this litigation.

5. The 1989 suit was brought by the Atlantic Richfield Company, which is the parent company of ARCO Environmental Remediation. The district court found that the Atlantic Richfield Company and ARCO Environmental Remediation are "[f]or practical purposes of the instant litigation ... the same entity." Neither party disputes that characterization.

6. The United States sued ARCO in federal district court to recover cleanup costs for various Superfund sites, including the CFROU. The State of Montana also sued ARCO in federal court under CERCLA for natural resource damage to the same area.

7. CERCLA applies state water quality standards to its cleanup operations. *See* 42 U.S.C. § 9621(d)(2)(C).

ARCO seeks preliminary and permanent injunctive relief ordering the DEQ to turn over documents pertaining to the CERCLA-mandated ecological risk assessment for the CFROU Superfund site. ARCO also seeks an order prohibiting closed-door consultation between employees and consultants of the EPA and the DEQ. ARCO asserts that this relief is mandated by Article II, Section 9 of the Montana Constitution, Montana's open meeting law, Mont.Code Ann. § 2–3–201 *et seq*, and Montana's public access to records law, Mont.Code Ann. § 2–6–101 *et seq*. ARCO did not state a claim for relief under either CERCLA or the CERCLA Cooperative Agreement.

On June 25, 1999, the DEQ removed this case to federal court, asserting that ARCO's claims arise under CERCLA and that ARCO artfully pled a federal claim as a state claim. ARCO filed a motion to remand. The DEQ filed a motion under Rule 19 to join the EPA as a defendant. The district court denied the motion to remand on the ground that CERCLA preempted ARCO's state law claims. The district court also granted the DEQ's motion to join the EPA. ARCO voluntarily dismissed the case with prejudice and now appeals the district court's denial of its motion to remand.

## II

■ Unless Congress expressly provides otherwise, a defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ..." 28 U.S.C. § 1441(a). If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 342 (9th Cir.1996); *Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998). We hold that the district court erred in denying ARCO's motion to remand. Because ARCO's claims do not arise under any federal law, this case does not fall within either the federal courts'

federal question jurisdiction, *see* 28 U.S.C. § 1331, or the federal courts' exclusive original jurisdiction over controversies arising under CERCLA, *see* 42 U.S.C. § 9613(b). We also reject the DEQ's contention that the district court may exercise jurisdiction over this case in order to enforce its order in *State ex rel Atlantic Richfield Co. v. Department of Health and Envtl. Sciences of the State of Montana.*

### A

■ As a general rule, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "[A] case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for S. California*, 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). Put simply, the existence of federal jurisdiction depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims.

■ On its face, ARCO's complaint does not state a claim that "arises under" federal law. Montana law creates the causes of action for access to public documents and meetings under which ARCO has chosen to seek relief. ARCO did not state a claim under CERCLA or the CERCLA Cooperative Agreement signed by the EPA and the DHES. The fact that ARCO's complaint makes repeated references to CERCLA does not mean that CERCLA creates the cause of action under which ARCO sues. *See Easton v. Crossland Mortgage Corp.*, 114 F.3d 979, 982 (9th Cir.1997); *Rains*, 80 F.3d at 343.

As the master of the complaint, a plaintiff may defeat removal by choosing not to plead independent federal claims. *See Caterpillar,* 482 U.S. at 399, 107 S.Ct. 2425; *Karambelas v. Hughes Aircraft Co.,* 992 F.2d 971, 975 (9th Cir.1993). However, under the artful pleading rule "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. 2841. A state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law, *see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Toumajian v. Frailey,* 135 F.3d 648, 654–55 (9th Cir.1998); (2) where the claim is necessarily federal in character, *see Brennan,* 134 F.3d at 1409; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question, *see Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Rains,* 80 F.3d at 343. We review each of these possible bases for federal jurisdiction.

### 1. *Complete Preemption*

Preempted state law claims may be removed to federal court only in the rare instances where Congress has chosen to regulate the entire field:

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. 1542 (holding that ERISA completely preempts certain state law claims) (internal citations omitted). The term "complete preemption" "describe[s] those cases in which federal law completely preempts state law and provides a federal remedy." *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1403 (9th Cir.1988); *see also Sullivan v. First Affiliated Sec.,* 813 F.2d 1368, 1372 (9th Cir.1987). Complete preemption is rare. *See* 16 Moore's Federal Practice § 107.14[4][b] (3d ed.1999). Unlike complete preemption, preemption that stems from a conflict between federal and state law is a defense to a state law cause of action and, therefore, does not confer federal jurisdiction over the case. *See Toumajian,* 135 F.3d at 655 (holding that because state law claims were not completely preempted by ERISA, federal court lacked removal jurisdiction).

CERCLA does not completely occupy the field of environmental regulation. Congress expressly declared that it had no intent to do so. *See* 42 U.S.C. § 9614(a) ("Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances ...."); 42 U.S.C. § 9672 ("Nothing in this subchapter shall be construed to affect either the tort law or the law governing the interpretation of insurance contracts of any State."); *see also Hudson Ins. Co. v. American Elec. Corp.,* 957 F.2d 826 (11th Cir.1992) (holding that CERCLA does not completely preempt state insurance law). In addition, federal EPA regulations clearly mandate that state law can provide a right to access to CERCLA records: "Unless required by Federal, State, or local law, grantees and subgrantees [here, the DEQ] are not required to permit public access to their records." 40 C.F.R. § 31.42(f).[8] At best,

---

**8.** Specifically, § 31.42 applies to "all financial and programmatic records, supporting documents, statistical records, and other records of grantees or subgrantees which are: (i) Required to be maintained by the terms of this Part, program regulations or the grant agreement, or (ii) Otherwise reasonably considered as pertinent to program regulations or the grant agreement." 40 C.F.R. § 31.42(a).

CERCLA may provide a conflict preemption defense to ARCO's state law claims.[9]

## 2. CERCLA § 113(b)

▇ The next question is whether CERCLA's jurisdictional provisions deprive the Montana state court of jurisdiction over this case, thereby making ARCO's claims "necessarily federal in character." With limited exceptions, § 113(b) confers on the federal district courts "exclusive original jurisdiction over all controversies arising under [CERCLA]." 42 U.S.C. § 9613(b). In addition, with exceptions not relevant here, § 113(h) postpones federal jurisdiction over "challenges to [CERCLA] removal or remedial action." 42 U.S.C. § 9613(h). Reading § 113(b) to be coextensive with § 113(h), we have held that jurisdiction under § 113(b) is "more expansive than ... those claims created by CERCLA," and "cover[s] any 'challenge' to a CERCLA cleanup." *Fort Ord Toxics Project, Inc. v. California Envtl. Protection Agency*, 189 F.3d 828, 832 (9th Cir.1999) (internal quotation marks omitted).

▇ Thus, ARCO's claims are necessarily federal claims under § 113(b) only if they constitute a "challenge to a CERCLA cleanup." An action constitutes a challenge to a CERCLA cleanup "if it is related to the goals of the cleanup." *Razore v. Tulalip Tribes of Washington*, 66 F.3d 236, 239 (9th Cir.1995). We have found actions to challenge CERCLA cleanups where the plaintiff seeks to dictate specific remedial actions, *see Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1482 (9th Cir.1995); to postpone the cleanup, *see Fort Ord*, 189 F.3d at 831; to impose additional reporting requirements on the cleanup, *see McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 330 (9th Cir.1995); or to terminate the RI/FS and alter the method and order of cleanup, *see Razore*, 66 F.3d at 239. However, we have also recognized that "Congress did not want § 113(h) to serve as a shield against litigation that is unrelated to disputes over environmental standards." *Fort Ord*, 189 F.3d at 831.

The suit before us is not related to the goals of the CFROU cleanup. The relief sought by ARCO does not alter cleanup requirements or environmental standards. Nor does it terminate or delay the CFROU cleanup. Rather, the suit involves only the public's right of access to information about that cleanup. Thus, we conclude that ARCO's claims do not arise under CERCLA § 113(b).

▇ Nevertheless, defendants contend that ARCO will use information obtained through this lawsuit in a pending state administrative proceeding regarding water quality standards applicable to the CFROU. Because CERCLA applies state water quality standards, *see* 42 U.S.C. § 9621(d)(2)(C), access to this information may lead to a reduction in the extent of cleanup required under CERCLA. Defendants also assert that enjoining closed-door meetings between the DEQ and the EPA will disrupt the CERCLA cleanup process. Even if defendants' allegations are correct, an action does not become a challenge to a CERCLA cleanup simply because the action has an incidental effect on the progress of a CERCLA cleanup. *See McClellan Ecological Seepage Situation*, 47 F.3d at 330 ("[E]very action that increases the cost of a cleanup or diverts resources or personnel from it does not thereby become a 'challenge' to the cleanup.").

Nor does our decision in *Brennan* provide support for defendants' contention that ARCO's claim arises under CERCLA. That case involved a class action suit brought in state court to recover sums charged by airlines in anticipation of a bill pending before Congress which would as-

---

Under the Cooperative Agreement, Montana receives federal funds from the EPA, making it a grantee.

9. The question whether CERCLA is a defense to ARCO's state law claims is not before this court, and we express no views on that matter.

sess a tax on airline tickets. The airlines collected the tax for periods in which it was not due. As a result, plaintiffs sued the airlines in state court for breach of contract and unlawful business practices. *See* 134 F.3d at 1408. Defendants removed the suit to federal court. This court affirmed the district court's denial of plaintiffs' motion to remand, holding that although the complaint was cast in state law terms, the suit was actually a tax recovery suit over which the federal courts have exclusive jurisdiction. *See id.* at 1409–10. The court in *Brennan* relied on the specific statutory language authorizing exclusive federal jurisdiction over tax recovery suits. Unlike the language of the statute in *Brennan*, which was broad enough to encompass the plaintiffs' claim, the language of § 113(b) is not so broad. This action may affect indirectly the CERCLA cleanup, but it does not challenge the CERCLA cleanup.

3. *Substantial Questions of Federal Law*

■ "Even where, as here, state law creates the cause of action, and no federal law completely preempts it, federal jurisdiction may still lie if 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" *Rains,* 80 F.3d at 345 (quoting *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. 2841). Defendants rely heavily on *Sparta* to argue that federal jurisdiction exists under this theory. Read properly, *Sparta* actually supports ARCO's contention that federal jurisdiction does not exist.

In *Sparta,* the Securities and Exchange Commission delisted and suspended trading of Sparta Surgical Corporation's stock. *See* 159 F.3d at 1211. In response, Sparta filed an action in a California court alleging state common law claims based on the National Association of Securities Dealers' violations of its own rules. The defendants removed the case to federal court. *See id.* On appeal, this court decided that removal was proper: "[A]lthough Sparta's theories are posited as state law claims, they are founded on the defendants' con-

duct in suspending trading and de-listing the offering, the propriety of which must be exclusively determined by federal law." *Id.* at 1212. The court stressed that federal jurisdiction existed because *"relief* is partially predicated on a subject matter committed exclusively to federal jurisdiction." *Id.* at 1213 (emphasis added).

In contrast to the basis for relief in *Sparta,* ARCO's right to relief is not predicated on federal law. Rather, the propriety of ARCO's claims must be determined according to Montana law alone. While the DEQ may defend against the state law claims by arguing that disclosure is barred by its obligations to protect the confidentiality of the EPA documents under its Cooperative Agreement and Memorandum of Agreement with the EPA, this answer is a defense to ARCO's claimed right, not an element of ARCO's state law cause of action. In short, ARCO's right to relief does not depend on the resolution of any federal law question.

For the same reason, cases from other circuits on which defendants rely do not provide support for their argument. In *Sable v. General Motors Corp.,* 90 F.3d 171 (6th Cir.1996), the Sixth Circuit decided that federal jurisdiction existed over plaintiff's state law tort action because an element of the tort claim was defendants' breach of a duty created by federal law. *See id.* at 174. Similarly, in *Marcus v. AT&T,* 138 F.3d 46 (2d Cir.1998), the Second Circuit held that federal jurisdiction existed because the plaintiffs' state law breach of warranty claim sought to enforce tariff agreements created by federal law.

**B**

■ The DEQ makes two additional arguments for why the district court had jurisdiction over this case. It argues that the district court has power to enforce its 1993 order in *State ex rel Atlantic Richfield Co. v. Department of Health and Envtl. Sciences of the State of Montana* under its power to exercise supplemental jurisdiction, 28 U.S.C. § 1367, and the All

Writs Act, 28 U.S.C. § 1651. That order dismissed without prejudice a similar suit by ARCO, but conditioned dismissal on ARCO's agreement to obtain the desired documents through discovery in litigation pending before the District of Montana.

■■■■■ A defendant seeking to remove a case to federal court must do so within thirty days of being served with the complaint. *See* 28 U.S.C. § 1446(b). The Notice of Removal "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." *O'Halloran v. University of Washington*, 856 F.2d 1375, 1381 (9th Cir.1988). However, a defendant may amend the Notice of Removal after the thirty day window has closed to correct a "defective allegation of jurisdiction." *See* 28 U.S.C. § 1653; *see also* 16 Moore's Federal Practice § 107.30[2][a][iv] ("[A]mendment may be permitted after the 30–day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction."). The rationale for permitting amendment to correct allegations of jurisdictional facts is that "[i]n determining whether a removal petition is incurably defective, the court not only examines the specific allegations of the petition itself, but also must scrutinize the record of the state court proceedings" for omitted jurisdictional facts. *Northern Illinois Gas Co.*

*v. Airco Indus. Gases*, 676 F.2d 270, 273 (7th Cir.1982).

■■■■■ The DEQ's Notice of Removal states that federal jurisdiction exists under 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b), but does not state that removal jurisdiction exists under either the supplemental jurisdiction statute or the All Writs Act.[10] Because more than thirty days have passed since this action was filed in Montana state court, the DEQ may not amend its Notice of Removal to state alternative bases for removal jurisdiction. The necessary amendment is more than a correction of a "defective allegation of jurisdiction" permissible under 28 U.S.C. § 1653.[11]

### III

■■■ Because the district court did not have jurisdiction over this case, it did not have the power to join the EPA as a defendant. *See International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 111 S.Ct. 1700, 1710, 114 L.Ed.2d 134 (1991) (stating that joinder is to be determined on remand in a case improperly removed to federal court). Therefore, the order joining the EPA was *ultra vires*.

### IV

We reverse the district court's denial of the motion to remand, and remand with

10. Although the All Writs Act does not confer subject matter jurisdiction on the federal courts, *see Lights of America, Inc. v. United States District Court*, 130 F.3d 1369, 1370 (9th Cir.1997), other circuits have decided that "[a] district court, in exceptional circumstances, may use its All Writs authority to remove an otherwise unremoveable state court case in order to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *In re Agent Orange Products Liability Litig.*, 996 F.2d 1425, 1431 (2d Cir. 1993) (internal quotation marks omitted); *see also Bylinski v. City of Allen Park*, 169 F.3d 1001, 1003 (6th Cir.), *cert. denied*, ——— U.S. ———, 119 S.Ct. 2396, 144 L.Ed.2d 796 (1999); *N.A.A.C.P. v. Metropolitan Council*, 144 F.3d 1168, 1169 (8th Cir.), *cert. denied*, 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 57 (1998); *VMS Ltd. Partnership Sec. Litig. v. Prudential*

*Sec. Inc.*, 103 F.3d 1317, 1324 (7th Cir.1996); *but see Hillman v. Webley*, 115 F.3d 1461, 1469 (10th Cir.1997) (rejecting that the All Writs Act provides jurisdiction to protect a settlement order).

11. We observe that, even if the DEQ had cited in its notice of removal these alternative bases for federal jurisdiction, we would be faced with the same threshold jurisdictional question that we decided in the preceding section: whether the district court had removal jurisdiction over an action brought under Montana sunshine laws and seeking as relief access to CERCLA documents and meetings. The fact that the district court entered the parties' stipulation as a court order does not obviate this inquiry because "federal jurisdiction cannot be created by contract." *Chicago Typographical Union v. Chicago Sun–Times*, 935 F.2d 1501, 1505 (7th Cir.1991).

instructions to vacate the order joining the EPA as a defendant and to remand the case to Montana state court.

REVERSED AND REMANDED.