Jerome HERMAN, on behalf of the General Public, Plaintiff,

v.

SALOMON SMITH BARNEY, INC., et al., Defendants.

No. 03–CV–0016W JAH.

United States District Court, S.D. California.

Feb. 27, 2003.

Jeffrey R. Krinsk, Finkelstein and Krinsk, San Diego, CA, for Jerome Herman, on behalf of the General Public.

William F. Alderman, Orrick, Herrington and Sutcliffe, Hojoon Hwang, Munger, Tolles and Olson, Timothy T. Scott, Sidley, Austin, Brown and Wood, Sonya Diane Winner, Covington and Burling, Paul M. Foster, Prudential Securities Inc., Gilbert R. Sevota, Howard Rice Nemerovski Canady, Falk and Rabkin, James A. Hughes, Sullwold and Hughes, Melvin R. Goldman, Morrison and Foerster, Bernard Reynold Suter, Keesal, Young and Logan, San Francisco, CA, for Salomon Smith Barney, Inc., UBS Paine Webber Inc., Merrill Lynch & Co., Morgan Stanley, Dean Witter & Co, Prudential Securities, Inc., Charles Schwab & Co., Inc., U.S. Bancorp, Bank of America Corporation, Does, 1–40, inclusive, Bear Stearns Companies, Inc.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION TO REMAND

WHELAN, District Judge.

Defendants Salomon Smith Barney, Inc., et al., ("Defendants") move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Jerome Herman ("Plaintiff") opposes. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1.(d.1). For the reasons outlined below, the Court **GRANTS** Defendants' motion to dismiss.

### I. BACKGROUND

On December 6, 2002 Plaintiff commenced this action in San Diego Superior Court alleging that Defendants violated California Business and Professions Code § 17200, *et seq.* (the "Unfair Competition Law," hereinafter "UCL") in connection with municipal bond sales. More specifically, Plaintiff alleges that Defendants charged excessive fees on Triple A and Double A secondary market municipal bonds and then failed to disclose such markups to consumers.

On January 3, 2003 Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. According to Defendants, federal jurisdiction is proper because federal law interpretation is required to resolve the case. Additionally, Defendants allege that this case is properly in federal court due to the 1934 Securities Exchange Act's exclusive jurisdiction provision. *See* 15 U.S.C. § 78aa. On January 10, 2003 Defendants moved to dismiss. Defendants argue that this case must be dismissed because (1) the 1934 Exchange Act's exclusive jurisdiction provision prevents Plaintiff from pursuing this matter in state court; and (2) Plaintiff's admitted lack of Article III standing precludes federal court litigation.

On February 3, 2003 Plaintiff moved to remand the case to San Diego Superior Court due to Plaintiff's admitted lack of Article III standing. Further, Plaintiff alleges that state court is the appropriate

forum because the case revolves around state, rather than federal law.

## II. LEGAL STANDARD

 The party seeking to invoke removal jurisdiction bears the burden of supporting its jurisdictional allegations with competent proof. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (per curiam); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988). "The propriety of removal thus depends on whether the case originally could have been filed in federal court." *Chicago v. International College of Surgeons*, 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); 28 U.S.C. § 1441(a).

 A court's removal jurisdiction must be analyzed on the basis of the pleadings at the time of removal. *See Sparta Surgical Corp. v. National Ass'n of Sec. Dealers*, 159 F.3d 1209, 1213 (9th Cir. 1998). District courts must generally construe the removal statutes strictly *against* removal and resolve any uncertainty as to removability in favor of remanding the case to state court. *Takeda v. Northwestern Nat'l. Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir.1985).

## III. DISCUSSION

Defendants argue that this case must be dismissed because Plaintiff cannot litigate this case in either federal or state court. More specifically, Defendants argue that Plaintiff lacks the Article III standing necessary to properly present a cause of action in federal court. Additionally, Defendant argues that this matter cannot be litigated in state court because exclusive federal jurisdiction exists. The Court will examine each argument in turn.

### A. PLAINTIFF LACKS THE ARTICLE III STANDING NECESSARY TO LITIGATE THIS CASE IN FEDERAL COURT

 The Court must first determine whether Plaintiff has standing. As the Supreme Court noted, Article III standing's first element is that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted). Here, it is undisputed that Plaintiff has suffered no injury in fact.[1] Indeed, both parties agree that Plaintiff has suffered no injury. Accordingly, Plaintiff does not retain Article III standing, and cannot pursue his claims in federal court.

### B. PLAINTIFF CANNOT PURSUE HIS UCL CLAIM IN STATE COURT BECAUSE IT DEALS EXCLUSIVELY WITH FEDERAL LAW

 As noted above, it is undisputed that Plaintiff lacks the ability to pursue his UCL claim in federal court because he lacks Article III standing. The parties are in tremendous disagreement, however, as to what should be done as a consequence of this undisputed fact. Plaintiff asks this Court to remand the case to state court in order to adjudicate his state law UCL claim. In contrast, Defendants argue that because remand would be futile, dismissal is the appropriate disposition. Before answering this question, the Court must first determine whether Plaintiff's claims are exclusively federal in nature, or whether

---

1. *See* Pl's Compl. at ¶ 3 ("As such Plaintiff alleges no harm or damages whatsoever regarding himself individually in this suit but brings this action to remedy an unfair business practice that is harming the public.");

*see also* Pl's Opp. at 4 ("HERMAN does not have standing to be a plaintiff in federal court because he has not suffered an 'injury in fact.'")

they may be properly remanded to state court.

Before proceeding, the Court notes that this is a case of first impression. The Court could not find, nor has either party noted, any binding Ninth Circuit authority dealing squarely with jurisdictional considerations associated with the Municipal Securities Rulemaking Board (hereinafter "MSRB"). Nonetheless, a review of both the existing law and Plaintiff's claims sufficiently directs this Court to the only legally supported conclusion: Plaintiff's complaint deals exclusively with federal law. Remand is not warranted.

The Securities and Exchange Act of 1934 (hereinafter "Exchange Act"), 15 U.S.C. § 78a *et seq.*, mandates exclusive federal jurisdiction over Exchange Act violations. In relevant part, it states:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violation of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

15 U.S.C. § 78aa; *see also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 370, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1211–1212 (9th Cir.1998). The MSRB is a regulatory board promulgated by the Exchange Act to regulate the purchase and sale of municipal securities. *See* 15 U.S.C. § 78o–4(b)(2) ("[t]he [MSRB] shall propose and adopt rules to effect the purposes of this chapter with respect to transactions in municipal securities effected by brokers, dealers, and municipal securities dealers.") Those persons or entities selling or dealing municipal securities must comply with MSRB rules. *See* 15 U.S.C. § 78o–4(c)(1)

("No broker, dealer, or municipal securities dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security in contravention of any rule of the [MSRB].") MSRB rule violations may result in license revocation and suspension, *see* 15 U.S.C. § 78o(b)(4)(D); *see also* 15 U.S.C. § 78o–4(c)(2), as well as potential federal criminal penalties. *See* 15 U.S.C. § 78ff(a).

██ A plaintiff may generally avoid federal jurisdiction by failing to plead independent federal claims. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "However, under the artful pleading rule 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" *ARCO Environmental Remediation, LLC v. Dep't of Health and Environmental Quality of the State of Montana*, 213 F.3d 1108 (9th Cir.2000) (*citing Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for S. California*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "A state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question." *Id.* (internal citations omitted).

Here, Plaintiff's complaint makes clear that, at a minimum, the right to relief depends on the resolution of a substantial, disputed federal question. Plaintiff states that "[m]unicipal bonds are regulated by the MSRB. The MSRB was established in 1975 by Congress to develop rules regulating securities firms and banks involved in underwriting, trading and selling municipal securities. The MSRB ... sets stan-

dards for all municipal securities dealers."[2] Plaintiff goes on to state "[t]he MSRB has broad rulemaking authority over municipal securities dealers' activities, including rules pertaining to the conduct of brokers and dealers with respect to customers involving: [1] fair price, [2] record keeping, [3] confirmation, clearance and settlement of transactions and [4] the nature of securities quotations[.]"[3] Complaint paragraphs 52–55 describe MSRB Rules G–17, G–30, G–19, and G–14.[4] Plaintiff then goes on to state *"[a]s a result of the MSRB Rules noted above, Defendants owe their customers the following duties[.]"*[5] Finally, Plaintiff claims that "Defendants knowingly and purposely breached each of their foregoing duties in connection with their sales of Low Risk Bonds to the public."[6] Indeed, Plaintiff's complaint makes no reference to any duties outside the MSRB framework.

In response, Plaintiff argues that "rules promulgated by regulatory bodies authorized by various federal Acts do not create exclusive jurisdiction or raise a substantial question of federal law."[7] To support this point, Plaintiff cites *Roskind v. Morgan Stanley Dean Witter,* 165 F.Supp.2d 1059, 1066–67 (N.D.Cal.2001). As a preliminary matter, the Court notes that *Roskind,* a district court case, is not binding precedent upon this Court. Nonetheless, *Roskind* is distinguishable from the present case. Most notably, the district court in *Roskind* stated:

Although the Exchange Act expressly requires that a self-regulatory organization comply with its own rules and that dealers comply with the Exchange Act, *it does not expressly require NASD members to comply with NASD rules*

*nor does it recognize a right of action against a dealer for NASD violations.* In contrast, the Exchange Act leaves violations of NASD rules to be addressed by NASD and where possible by nonconflicting state law. Accordingly, the Court finds that 15 U.S.C. § 78aa does not deprive a state court of jurisdiction to adjudicate state law claims against a securities dealer.

*Roskind,* 165 F.Supp.2d at 1066 (emphasis supplied). In sharp contrast, the MSRB *does require* brokers, dealers and municipal securities dealers to comply with MSRB rules. *See* 15 U.S.C. § 78o–4(c)(1). Additionally, the Exchange Act does recognize a right of action against individuals who violate MSRB rules. *See Grandon v. Merrill Lynch & Co., Inc.,* 147 F.3d 184, 193 (2nd Cir.1998) ("we also recognize that a private action under the antifraud provision of § 10(b) and Rule 10b–5 exists against broker-dealers who charge undisclosed, excessive markups on municipal bonds.")

Moreover, *Roskind* is distinguishable insofar as the complaint itself is concerned. In *Roskind,* "the NASD rule violations are only one of nine fiduciary duties that Plaintiff alleges Defendant breached." *Roskind,* 165 F.Supp.2d at 1067. Here, *every single duty* that Plaintiff alleges Defendant breached is based on the MSRB rules. This critical difference renders *Roskind* far less persuasive when determining whether remand or dismissal is appropriate.

As Plaintiff himself has stated, "the gravamen of Plaintiff's complaint is that the fees charged by Defendants for the sales and purchases of Triple A or Double A

---

2. Pl's Compl. at ¶ 50.

3. *Id.* at ¶ 51.

4. *Id.* at ¶¶ 52–55.

5. *Id.* at ¶ 56 (emphasis supplied.)

6. *Id.* at ¶ 57.

7. Pl's Opp. at 6.

rated municipal bonds are unreasonable and not disclosed to its customers."[8] The only legal hook which could potentially yield Plaintiff relief arises under the MSRB's well-defined waters. In fact, Plaintiff himself admits that the method for determining whether municipal bond prices are reasonable is established by MSRB Rule G–30.[9] Plaintiff's second allegation centers around Defendants' alleged failure to disclose the fee amount and Defendants' role in the transactions.[10] Plaintiff again cites the MSRB rules by stating "[a]s Defendants knew, such practice constituted a violation of MSRB Rule G–15."[11]

In light of this review, the Court finds that each duty Plaintiff claims Defendant breached is established by the MSRB. Regardless of whether Plaintiff wishes to term Defendants' markups and fees illegal, unfair, or fraudulent, resolution of any markup/fee issue will turn on MSRB Rule G–30 for several reasons. First, Plaintiff's complaint uses the seven factors delineated by Rule G–30 to allege that Defendants charge excessive fees.[12] Second, Plaintiff has provided no other framework or method to establish his excessive fee claim.[13] Third, the MSRB itself has stated that each municipal security must be evaluated on a case-by-case basis within the Rule G–30 framework to determine whether a given fee is excessive.[14] In sum, despite Plaintiff's best efforts to frame this issue as one exclusively within the purview of his state UCL claim, just the opposite is true. Plaintiff is unquestionably attempting to vindicate rights exclusively established under the Exchange Act, and such vindication attempts must be exclusively pursued in federal court. *See* 15 U.S.C. § 78aa.

## IV. CONCLUSION AND ORDER

Because federal courts maintain exclusive jurisdiction over Plaintiff's MSRB-based claims, and Plaintiff lacks Article III standing, the Court **GRANTS** Defendants' Motion to Dismiss. (Doc. No. 6–1.) The Court **DENIES** Plaintiff's Motion for Remand as moot. (Doc. No. 9–1.) The Clerk of the Court shall close the district file.

**IT IS SO ORDERED.**

---

8. Pl's Opp. at 2.

9. Compl. at ¶ 66.

10. Compl. at ¶ 63.

11. *Id.*

12. Those seven factors are: (1) the best judgment of the broker, dealer or municipal securities dealer as to the fair market value of the securities at the time of the transaction; (2) the expense involved in effecting the transaction; (3) the fact that the broker, dealer or municipal broker is entitled to a profit; (4) the total dollar amount of the transaction; (5) the availability of the security in the market; (6) the price or yield of the security; and (7) the nature of the professional's business. *See* MSRB "Report on Pricing" at 5160; *see also Grandon,* 147 F.3d at 190.

13. Indeed, Plaintiff would have a difficult time finding an alternative method. The case-by-case analysis using MSRB Rule G–30 is strongly supported by decisional law. *See Grandon,* 147 F.3d at 190; *see also Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.,* 132 F.3d 1017, 1033 (4th Cir.1997).

14. As the MSRB noted, "[m]ost of the commentators expressed opposition to the idea of developing specific numeric guidelines. They suggested that such guidelines would be impractical, inappropriate and unworkable in light of the heterogeneous nature of the municipal markets." MSRB "Report on Pricing" at 5159.