Milton UTLEY, Plaintiff-Appellant,

v.

VARIAN ASSOCIATES, INC., Defendant-Appellee.

No. 85–2724.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1986.

Decided March 3, 1987.

As Amended April 7, 1987.

Gerard Hinckley and Herbert W. Yanowitz, San Francisco, Cal., for plaintiff-appellant.

Richard R. Dale and Gilmore F. Diekmann, Jr., San Francisco, Cal., for defendant-appellee.

Before CHAMBERS, NELSON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Milton Utley appeals from the district court's summary judgment dismissing his state law employment discrimination action against Varian Associates, Inc. (Varian). Utley contends that the district court's removal of his action from state court was improper because his state law causes of action, some of which were predicated on Varian's alleged violation of its federal affirmative action duties, did not raise a federal question. Utley also contests the grant of summary judgment. We hold that the district court did not have removal jurisdiction over this action and therefore reverse.

## I.

Varian, a federal government contractor, laid off Utley after four years of employment. Eventually, it dismissed him. Utley sued in California court, alleging five state law counts, three of which are the subject of this appeal. In his first claim, Utley alleged that Varian dismissed him because

of his race (Utley is black) in violation of Varian's affirmative action duties as a federal contractor under Executive Order 11,-246, 30 Fed.Reg. 12,319 (1965), *reprinted in* 42 U.S.C. § 2000e app. at 28–31 (1982), and its implementing regulations, 41 C.F.R. ch. 60 (1985), and thus committed an unlawful employment practice under section 12940 of the California Government Code. Section 12940 prohibits employers from discharging employees on the basis of race. Cal.Gov't Code § 12940(a) (West 1986). Utley also claimed that Varian misrepresented itself as an "equal opportunity employer" by failing to comply with the federal affirmative action program. Finally, Utley alleged that Varian's conduct constituted an unlawful business practice under section 17200 of the California Business and Professions Code.

Varian removed the action to federal district court. The district court held that Utley's reliance on the executive order gave it federal question removal jurisdiction, the case being "a clear example of 'a substantial dispute over the effect of federal law' where 'the result turns on the federal question.'" 625 F.Supp. 104, 106 (N.D. Cal.1985) (quoting *Guinasso v. Pacific First Fed. Sav. & Loan Ass'n*, 656 F.2d 1364, 1365–66 (9th Cir.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed. 138 (1982)). The court granted Varian's summary judgment motion dismissing Utley's state claims to the extent they were based on violations of the executive order, holding them to be preempted by the executive order. The court remanded Utley's remaining claims to the state court.

On appeal Utley contends that the district court did not have removal jurisdiction over the action, that the executive order did not preempt his causes of action based on the order, and that the district court should have abstained from exercising jurisdiction because of unsettled questions of state law.

## II.

■ Utley argues that the district court's removal of his action from state court was improper, because he could not

have brought his state law action in federal court in the first instance. We review the district court's decision to remove *de novo. Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766, 768 (9th Cir.1986).

Removal is proper of any state civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The district courts' original jurisdiction extends to "all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. Thus, "propriety of the removal ... turns on whether the case falls within the original 'federal question' jurisdiction of the federal courts." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* —— U.S. ——, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). The issue is whether Utley's state law claims, predicated on Varian's alleged violation of federal affirmative action duties, "arise under" federal law.

*Merrell Dow* clarifies the "arising under" issue in cases in which the federal law incorporated by a state law claim does not itself confer a private right of action. In *Merrell Dow* the plaintiff alleged that the defendant's misbranding of a drug in violation of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–392, established a rebuttable presumption of negligence in his state law products liability action. 106 S.Ct. at 3231. On defendant's petition, the district court removed the action from state court, holding that the plaintiff's reliance on the defendant's violation of the FDCA made the action one "arising under" federal law. *Id.* The Court, in rejecting the district court's reasoning and holding that it did not have removal jurisdiction, found that the lack of a private right of action under the FDCA disposed of the issue of whether a state claim based on its violation arose under federal law:

[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*Id.* at 3237. The Court explained that to permit removal based on a federal statute not conferring a private right of action would disregard the will of Congress to preclude a private remedy in federal court for the statute's violation. *Id.* at 3234–35.

■ *Merrell Dow* provides the framework of analysis for this case, for Utley's state claims are based on Varian's alleged violation of federal law.[1] Varian attempts to distinguish *Merrell Dow* on two grounds. First, Varian cites *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983), for the proposition that "[e]ven though state law creates [the] causes of action, [the] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that [the] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." It argues that here, unlike in *Merrell Dow,* a "substantial" federal question is necessarily raised. In *Merrell Dow,* resolution of the issue of the defendant's violation of the FDCA did not necessarily dispose of the liability issue, as the violation created only a rebuttable presumption of negligence. Here, Varian contends, determination of its liability in Utley's state law causes of action requires resolution of the "substantial" issue of its compliance with the federal affirmative action program. Varian argues that this necessary resolution of a "substantial" federal question dictates finding, under *Franchise Tax Board,* that Utley's state law causes of action arise under federal law.

■ We disagree. The Court in *Merrell Dow* found that the congressional determination not to provide a private cause of action under the federal statute constituted "a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." 106 S.Ct. at 3236. Under *Merrell Dow,* if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a "substantial" federal question.

■ Varian also argues that Utley has a private, federal remedy to redress violations of the affirmative action program. Varian points to the availability of judicial review under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706; *see Legal Aid Soc'y v. Brennan,* 608 F.2d 1319 (9th Cir.1979), *cert. denied sub nom. Chamber of Commerce v. Legal Aid Soc'y,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980), and administrative enforcement initiated by employee complaints, Exec. Order No. 11,-246 §§ 206, 208–209; 41 C.F.R. §§ 60–1.20 to –1.28 (employee complaint, hearing, and sanction proceedings); *see also infra* section III. These remedies, however, are not comparable to a suit against the employer in federal court. Judicial review under the APA typically involves suit against the Department of Labor, not the employer. Administrative enforcement can include an award of back pay from the employer, 41 C.F.R. § 60–1.26(a)(2), but this enforcement mechanism is nonjudicial. Neither remedy indicates congressional intent to permit suit against the employer in federal court, and thus neither supports removal jurisdiction under *Merrell Dow.*[2]

1. The district court entered judgment prior to the Supreme Court's decision in *Merrell Dow* and thus did not adopt this analysis.

2. Although Varian does not argue the point, we note that the possible existence of a private right of action for Utley under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1), does not mean that his state law causes of

action arise under federal law: Utley's causes of action do not specifically invoke Title VII, and thus do not require resolution of any questions arising under it. The fact that the executive order program provides for the referral of complaints to the Equal Employment Opportunity Commission (EEOC) for proceedings under Title VII, Exec. Order No. 11,246 § 209(a)(3); 41 C.F.R. § 601.24(a), does not alter this analysis.

Only if the executive order provides Utley with a private right of action against Varian in federal court might his complaint raise a "substantial" federal question permitting removal jurisdiction. This is an issue of first impression in this circuit, which we address next.

### III.

The cornerstone of the affirmative action program is its requirement that government contracting agencies provide in all nonexempted government contracts a clause that, among other things, prohibits contractors from discriminating on the basis of race and requires the contractors to take "affirmative action" to ensure that employees are hired without regard to race. Exec. Order No. 11,246 § 202; 41 C.F.R. § 60–1.4(a); *see also* 41 C.F.R. §§ 60–1.40 to –1.43, –2.10 to –2.14, –2.20 to –2.26, –3.1 to –3.16 (detailing affirmative action requirements). The executive order assigns to the Secretary of Labor the duty to enforce its provisions, Exec. Order No. 11,246 § 201, which the Secretary has delegated, *see id.* § 401 (permitting delegation of Secretary's duties), to the Office of Federal Contract Compliance Programs (OFCCP), 41 C.F.R. § 60–1.2. The OFCCP monitors program compliance through compliance reviews and investigation of employee complaints. Exec. Order No. 11,246 § 206; 41 C.F.R. §§ 60–1.20 to –1.24.

The program contains several enforcement mechanisms. First, the OFCCP may refer complaints to the EEOC for proceedings under Title VII of the Civil Rights Act of 1964. Exec. Order No. 11,246 § 209(a)(3); 41 C.F.R. § 60–1.24(a). Sec-

ond, the OFCCP may, after making reasonable attempts to secure compliance "by methods of conference, conciliation, mediation, and persuasion," recommend to the Justice Department that it bring "appropriate proceedings," including those for injunctions, to redress "substantial or material" violations. Exec. Order No. 11,246 § 209(a)(2), (b); *see also* 41 C.F.R. § 60–1.26(a)(2), (e) (implementing regulations permitting Attorney General to also bring suit in federal court for recovery of back pay). Finally, after making reasonable attempts at conciliation, the OFCCP may institute administrative enforcement proceedings to cancel or suspend the contract and bar the contractor from future government work. Exec. Order No. 11,246 § 209(a)(5), (a)(6), (b); *see also* 41 C.F.R. § 60–1.26(a)(2) (regulations providing also for award of back pay). The regulations provide that the Secretary may impose these administrative remedies only after the Solicitor of Labor conducts a hearing or the contractor waives it. 41 C.F.R. § 60–1.26(a)(2), (c), (d).

■ Neither the executive order nor the regulations *expressly* provides a private right of action in federal court to redress affirmative action violations. The district court found no private right of action *implicit* in the executive order, on the ground that a private right of action " 'would be obviously destructive of the administrative scheme' " established by the order. 625 F.Supp. at 107 (quoting *Traylor v. Safeway Stores, Inc.*, 402 F.Supp. 871, 875–76 (N.D. Cal.1975)).[3] We review the district court's decision construing the executive order *de novo. Cf. Trustees of Amalgamated Ins. Fund v. Geltman Indus.*, 784 F.2d 926, 929 (9th Cir.1986) (*de novo* review for statutory

Any resulting private right of action would be grounded on Title VII, which Utley's state law causes of action do not invoke, and not on the executive order program itself.

**3.** Most courts that have considered the issue have found no implied private right of action under the executive order. *See, e.g., Cohen v. Illinois Inst. of Technology,* 524 F.2d 818, 822 n. 4 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *Weise v. Syracuse Univ.,* 522 F.2d 397, 411 n. 23 (2d Cir.1975); *Manuel v. International Harvester Co.,* 502

F.Supp. 45, 47–48 (N.D.Ill.1980); *Traylor v. Safeway Stores, Inc.,* 402 F.Supp. at 874; *cf. Farkas v. Texas Instrument, Inc.,* 375 F.2d 629, 632–33 (5th Cir.) (private action under predecessor of Exec. Order No. 11,246 would be inconsistent with its administrative enforcement scheme), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967). *But see Lewis v. Western Airlines, Inc.,* 379 F.Supp. 684, 686–89 (N.D.Cal. 1974) (private action under Exec. Order No. 11,246 compatible with its administrative enforcement scheme).

interpretation), *cert. denied,* —— U.S. ——, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).

■ Were the affirmative action program created by Congress, we would examine congressional intent to determine whether a private right of action should be inferred. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 3092–94, 87 L.Ed.2d 96 (1985); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400, 406–08 (9th Cir.1983). Because the executive has created the affirmative action program, a similar analysis, focusing on executive rather than congressional intent, is appropriate in determining whether the executive order contemplates a private right of action.[4]

■ The Supreme Court in *Cort v. Ash* listed four factors relevant "[i]n determining whether a private remedy is implicit in a statute not expressly providing one":

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a

cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2087 (citations omitted). Focusing on executive rather than legislative intent, we apply these factors to the executive order program.

The first *Cort* factor weighs in favor of inferring a private right of action. Utley is black, and the affirmative action program clearly seeks to secure equal opportunity in employment for minorities. Utley is thus a member of the class for whose "especial benefit" the program was created.

The second factor, however, strongly cautions against finding a private right of action. The executive order and regulations provide no explicit indication that the executive intended to create such a remedy. Likewise, this court has found no executive statement expressing an unambiguous view on the subject.[5] We are left, then, to analyze the program to determine whether it implicitly indicates an executive intent to provide a private remedy.

We follow the "elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979); *accord Mexico City Aircrash,* 708 F.2d at 407. The affirmative action program contains detailed enforcement procedures, including referrals to the EEOC and the Justice Department, and administrative pro-

---

**4.** One, potentially critical, difference between the two forms of analyses is that the principle of separation of powers may require an executive-created action to be rooted in an appropriate grant of authority from Congress. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 302, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979) (principle of separation of powers requires any "substantive" regulation, " 'affecting individual rights and obligations,' " to be "rooted in a grant of [legislative] power by the Congress and subject to limitations which that body imposes"); *cf. Kuhn v. National Ass'n of Letter Carriers,* 570 F.2d 757, 760–61 (8th Cir.1978) (Exec. Order No. 11,491 regulating federal labor-management relations is not "law" for purposes of 28 U.S.C. § 1331, because not congressionally authorized) (cited with approval in *Leath v. Stetson,* 686 F.2d 769,

771 (9th Cir.1982)). Because we conclude below that Executive Order 11,246 provides no private right of action, we need not address the authorization issue.

**5.** The proposed 1976 revisions to the implementing regulations expressly stated that the executive order did not confer a private right of action. Equal Employment Opportunity: Proposed Revisions and Redesignation of Regulations, 41 Fed.Reg. 40,340, 40,352 (1976). This statement was omitted from the final regulations. We decline to read tea leaves and infer from this omission an executive intent to create a private right of action, particularly in light of the following analysis.

ceedings for contract cancellation and recovery of back pay. This comprehensive enforcement mechanism creates a strong presumption that the executive deliberately omitted a private remedy from the program. *Cf. Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750 (1981) ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.") The Fifth Circuit in *Farkas* considered whether the predecessor of Executive Order 11,246—Executive Order 10,-925—conferred a private right of action. The court found the existence of administrative enforcement procedures under the executive order, "its narrowly limited reference to judicial enforcement," and the opportunity to file complaints with the EEOC, evidenced an executive intent not to provide a private remedy. 375 F.2d at 633. The present affirmative action program even more strongly evidences such intent, for it explicitly provides for the administrative recovery of back pay in addition to the remedies available under the program considered in *Farkas.*

This lack of any indication of executive intent to provide a private judicial remedy would alone arguably support a finding that none was implicit in the executive order. *Cf. Mexico City Aircrash,* 708 F.2d at 408 (failure to satisfy second *Cort* factor indicates that no private right of action under statute should be inferred). Yet, if the latter two *Cort* factors are considered, this conclusion becomes even stronger. While equal opportunity in federal employment is not an area of law "traditionally relegated to state law," a private judicial remedy would not be particularly consistent with the "underlying purposes" of the

affirmative action program. It is, of course, quite possible that private actions under the executive order would further promote the program's goal of equal employment opportunity for minorities in the workplace. However, as previously noted, the executive order envisions achievement of this goal through conciliation—not confrontation. Only after having made reasonable attempts at "conference, conciliation, mediation, and persuasion" does the executive order direct the Secretary to resort to other enforcement methods. A private action against the employer for affirmative action violations could very well circumvent the Secretary's conciliation efforts, upsetting the administrative enforcement mechanism contemplated by the executive order. *Traylor v. Safeway Stores, Inc.,* 402 F.Supp. at 875–76.[6] This inconsistency with the affirmative action program's emphasis on conciliation further demonstrates the inappropriateness of inferring a private right of action under the executive order.

▆ Our analysis of the *Cort* factors leads us to conclude that the executive did not intend a private judicial remedy to redress violations of Executive Order 11,-246's affirmative action program. We therefore decline to interpret the executive order as providing a private right of action.[7] Because Utley possesses no private right of action under the executive order, his state claims' incorporation of it does not raise a "substantial" question of federal law under *Merrell Dow,* and the district court could not assume removal jurisdiction on this basis.

## IV.

Varian lastly contends that Utley's causes of action, even though drafted as arising under state law, are "really federal

---

**6.** This conflict between public and private enforcement is not present to the same degree in Title VII, because Title VII expressly provides a private right of action but limits the right to cases where the EEOC has been unsuccessful in achieving compliance. *See* 42 U.S.C. § 2000e–5(f)(1). The executive order program, which does not expressly address private actions in federal court, does not provide a comparable mechanism to reduce this conflict.

**7.** *Lewis v. Western Airlines, Inc.,* 379 F.Supp. 684 (N.D.Cal.1974), is overruled to the extent it is inconsistent with this opinion.

law claims." Varian argues that the executive order preempts Utley's state law claims incorporating it and that the district court therefore could have assumed jurisdiction over the action under the "artful pleading doctrine."

The artful pleading doctrine is an exception to the long-standing rule that federal courts cannot assume federal question jurisdiction solely on the basis of federal law raised as a defense. *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 931 (9th Cir.), *cert. granted,* —— U.S. ——, 107 S.Ct. 455, 93 L.Ed.2d 401 (1986). In the preemption context it provides that " 'if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.' " *Id.* at 932 (quoting *Franchise Tax Bd.*, 463 U.S. at 24, 103 S.Ct. at 2854).

■ The artful pleading doctrine involves the court's recharacterization of a state law claim as a federal one. *Williams,* 786 F.2d at 931 n. 1, 932 n. 2, 933; *Hunter v. United Van Lines,* 746 F.2d 635, 640 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985). This court has used this recharacterization to distinguish actions maintaining jurisdiction under the artful pleading doctrine from those involving only "ordinary" preemption raised as a defense, which does not itself support jurisdiction. *See Williams,* 786 F.2d at 932; *Hunter,* 746 F.2d at 641–43. From this fiction of recharacterization stems the prerequisite for invoking the doctrine that not only must the federal cause of action "completely preempt" the state cause of action, but it must also provide a "superseding remedy replacing the state law cause of action," *Williams,* 786 F.2d at 932, for if no federal right of action exists under the preempting federal law, recharacterization of the plaintiff's state law claim as a federal claim is doctrinally impossible. *Id.* at 932 n. 2; *Hunter,* 746 F.2d at 642–43. *But cf.*

*Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766, 768–70 (9th Cir.1986) (applying artful pleading doctrine in nonpreemption context in which no analogous federal right of action existed).

■ Before analyzing the artful pleading doctrine's applicability to this case, we briefly address the doctrine's relationship to the jurisdictional analysis of the preceding sections (the *Merrell Dow* test). The two modes of analysis are coexistent, and federal question jurisdiction may be supported under either basis. *See Franchise Tax Bd.*, 463 U.S. at 14–27, 103 S.Ct. at 2848–55 (applying both modes of analysis to determine whether federal jurisdiction existed). While both analyses are similar in that under either the lack of a private remedy under the relevant federal law will frustrate jurisdiction,[8] they are not identical. Under *Merrell Dow* a federal question is potentially raised by the state law cause of action's express incorporation of federal law. The artful pleading doctrine, on the other hand, asks whether the state law cause of action is properly recharacterized as a federal cause of action because a federal law, not necessarily expressly incorporated by the state law cause of action, preempts it. Even though a state law cause of action may not expressly raise a "substantial" federal question, jurisdiction may still be established under the artful pleading doctrine.

■ Having found that Utley's state law claims' express incorporation of the executive order does not raise a substantial federal question, we must then consider whether jurisdiction could be supported under the artful pleading doctrine. *See Shaw v. California Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 603 (9th Cir.1986) (district court's judgment may be affirmed on any basis supported by the record even if district court did not rely on that basis). Varian's sole argument is that Executive

---

**8.** Under *Merrell Dow,* because the congressional intent not to provide a private right of action dictates that the federal question expressly raised by the state law claim is not "substantial"; under the artful pleading doctrine because without out a federal right of action recharacterization of the state law claim as a federal claim is impossible.

Order 11,246 preempts Utley's state law claims, which should therefore be recharacterized as arising under the executive order. The executive order, however, does not provide a private right of action in federal court. Nor does the administrative relief available to Utley under the executive order qualify as a "superseding" remedy for purposes of the artful pleading doctrine. The superseding federal remedy must provide a right of action *in federal court;* otherwise the federal court would be unable to take jurisdiction over the state law cause of action by recharacterizing it as a federal court action. We need not decide whether the executive order "completely preempts" Utley's state law causes of action, because, without an existing federal right of action, recharacterization of Utley's state law claims as an action under Executive Order 11,246 is impossible.

Finally, although Varian does not make the argument, we note that Utley's state law claims are not properly characterizable under the artful pleading doctrine as Title VII claims. While Title VII does provide a private right of action, it does not preempt Utley's state law claims. *See California Fed. Sav. & Loan Ass'n v. Guerra,* — U.S. —, 107 S.Ct. 683, 690–91, 695, 93 L.Ed.2d 613 (1987) (preemptive reach of Title VII is narrow, limited to state statutes that are inconsistent with or unlawful under Title VII); 42 U.S.C. §§ 2000e–7, 2000h–4. Therefore, the district court could not take jurisdiction of this action under the artful pleading doctrine.

## V.

We conclude that the district court did not have jurisdiction over this action. We therefore do not address the preemption or abstention issues. The judgment of the district court is REVERSED and the action REMANDED. The district court is directed to remand the entire action to the Superior Court of the State of California for the County of San Mateo.

* Donald Hodel, the current Secretary of United States Department of the Interior, is substituted