**PRECISION PAY PHONES, Plaintiff,**

v.

**QWEST COMMUNICATIONS CORPORATION,**
**Defendant.**

**Nos. C–02–0213 EMC, C–02–0215 EMC.**

United States District Court,
N.D. California.

May 31, 2002.

Joseph Lisha, San Francisco, CA, for plaintiff.

Richard W. Davis, Shigeru Watanabe, Kelley Drye & Warren, LLP, Los Angeles, CA, Theodore G. Spanos, Wilfredo Hernandez, Jr., Morgan Lewis & Bockius LLP, Los Angeles, CA, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTIONS TO REMAND

CHEN, United States Magistrate Judge.

### I. INTRODUCTION

The Court, having reviewed the briefs, supporting documentation and record in this case, as well as having heard the argument of counsel, hereby grants the plaintiff's motions to remand these actions to state court pursuant to 28 U.S.C. § 1447.

### II. BACKGROUND

Plaintiff Precision Pay Phones ("Plaintiff") owns payphones and is a "payphone service provider" ("PSP"). PSPs generally receive compensation for use of their telephones in two ways. First, they collect coins directly deposited into their payphones. *Illinois Public Telecommunications Ass'n v. F.C.C.*, 117 F.3d 555, 558–59 (D.C.Cir.1997). Second, they are compensated through contracts with particular "interexchange carriers" ("IXC"s) which provide long distance telephone communications services for *e.g.*, collect calls or calls billed to a calling card or third party.[1] *Id.*

However, as to payphones calls utilizing access codes (800 numbers or 10XXX numbers that the caller uses to reach a desired long-distance carrier) and subscriber 800 numbers from which an IXC (with whom the PSP does not have a contract) derives revenues, independent PSPs receive no

compensation from such calls. *See id.* at 559. IXCs utilize a "dial-around" system permitting the payphone user to make such calls without depositing coins or using the PSP's contracted IXC. *Id.* "Dial-around" calls bypass the normal (or default) local and long distance services provided to the payphones. Upon receipt of a call from a payphone using a toll-free prefix, the call is routed through a LEC which accesses a database of all toll-free prefixed numbers, identifies the particular IXC and routes the call accordingly.

Defendant Qwest Communications Corporation ("Defendant") is an IXC. No express contact or agreement exists between Plaintiff and Defendant. Thus, no contractual provision was made between the parties regarding compensation for these "dial-around" calls made from Plaintiff's payphones. There is no dispute, however, that Defendant obtains a financial benefit from these calls originating from Plaintiff's payphones.

Previously, PSPs could block callers' attempts to dial around a contracted IXC, but in 1990, Congress passed legislation prohibiting PSPs from blocking such calls. *Id., citing,* 47 U.S.C. § 226(c)(1)(B). To promote competition among PSPs and to ensure that PSPs would get paid for use of their payphones for "dial-around" calls to non-contracted IXCs, Congress enacted Section 276 of the Telecommunications Act of 1996. Section 276 provided for establishment by the Federal Communications Commission (FCC) of "a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone." 47 U.S.C. § 276(b)(1)(A).

---

1. Competing against independent PSPs like Plaintiff are local exchange carriers ("LEC"s) which have local networks able to receive subsidies for common line charges that LECs assess IXCs for originating and terminating long-distance calls. *Illinois Public Telecommunications,* 117 F.3d at 559.

Pursuant to that charge, the FCC established rules requiring that IXCs compensate PSPs for use of the payphones. Title 47 of Code of Federal Regulations, § 64.1300(a) provides that the "first facilities-based interexchange carrier to which a completed coinless access code or subscriber toll-free payphone call is delivered by the local exchange carrier shall compensate the payphone service provider for the call at a rate agreed upon by the parties by contract." Additionally, "[i]n absence of an agreement as required by paragraph (a) of this section, the carrier is obligated to compensate the payphone service provider at a per-call rate of $0.24." 47 C.F.R. § 64.1300(c).

Plaintiff filed two separate, but similar, small-claims complaints against Defendant which differ only with regard to the time period and amounts claimed due. These complaints were filed in the Small Claims Division of the Superior Court of California in San Francisco County. Plaintiff seeks to recover compensation for Defendant's "dial-around" calls originating from Plaintiff's payphones. Plaintiff's complaints consist of the following claim: "Defendant owes me the sum of ($1,828.14 and $2,055.63, respectively), not including court costs, because: Underpayment of ... Dial Around Compensation." Small Claims Compl. No. 793996 ¶ 1; Small Claims Compl. No. 793998 ¶ 1.

On January 11, 2002, Defendant removed these actions to federal court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1441(b). On February 5, 2002, Plaintiff filed a motion to remand each case back to state court and the Court held argument on these motions on April 24, 2002.

### III. ANALYSIS

An action may be removed from state court if it is one over which the federal district courts has "original jurisdiction."

28 U.S.C. § 1441(a). Defendant asserts there is federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 which confers jurisdiction over civil actions "arising under" federal law.

■ Pursuant to 28 U.S.C. § 1447(c), the Court must remand a removed action where "[i]f at any time before final judgment it appears that [the Court] lacks subject matter jurisdiction over the case." "Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (internal quotations omitted).

■ Because Defendant opposes remanding these actions, it has the burden of establishing that removal was proper in the first place. *Roskind v. Morgan Stanley Dean Witter & Company*, 165 F.Supp.2d 1059, 1063 (N.D.Cal.2001), citing, *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir.1988). The issue here is whether Defendant has met this burden by demonstrating the Court's original jurisdiction over Plaintiff's claims.

### IV. WELL–PLEADED COMPLAINT RULE

■ The determination of the existence of original jurisdiction of the district court (here based solely on federal question jurisdiction) is governed in the first instance by the "well-pleaded complaint" rule. "[A] case 'arises under' federal law within the meaning of the general federal question statute only if the federal question appears on the face of [the] plaintiff's well-pleaded complaint; if not, original jurisdiction is lacking even if the defense is based on federal law." *Hunter v. United*

*Van Lines,* 746 F.2d 635, 639 (9th Cir. 1984), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985). Under the well-pleaded complaint rule, the Court must look only to the face of the plaintiff's complaint to determine whether the plaintiff has presented a federal question. *See Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (*"Franchise Tax Board"*). The plaintiff is the master of his case and may ignore federal claims and assert only state claims, and thus defeat removal. *Duncan,* 76 F.3d at 1485. Federal question jurisdiction may not be sustained on a theory that the plaintiff has not advanced. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809 n. 9, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *see also Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) (noting that a well-pleaded complaint for the purposes of conferring "arising under" jurisdiction is one where the court considers only what necessarily appears in the plaintiff's statement or claim, unaided by anything alleged in anticipation or avoidance or defenses which it is thought the defendant may interpose). Moreover, a case may not be removed to federal court solely on the basis of a federal defense. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

Thus, the general rule in situations where removal is based on federal question jurisdiction is that, unless a federal claim appears on the face of a well-pleaded complaint, removal is improper. *Redwood Theatres v. Festival Enterprises, Inc.,* 908 F.2d 477, 479 (9th Cir.1990); *see Taylor v. Sun Reporter Publ'g Co.,* No. C98–2044 VRW, 1999 WL 782393, *1 (N.D.Cal. Sept.29, 1999) (remanding a case to state court where a small claims court complaint did not allege on its face any federal cause of action or any other reference to federal law).

Here, Plaintiff's small claims complaints simply contain boilerplate language typical of small claims actions. Plaintiff asserts, *inter alia,* that "Defendant owes me the sum of ($1,828.14 and $2,055.63, respectively), not including court costs, because: Underpayment of ... Dial Around Compensation." Small Claims Compl. No. 793996 ¶ 1; Small Claims Compl. No. 793998 ¶ 1. The complaints further assert that Plaintiff requested payment and Defendant refused to pay. Small Claims Compl. No. 793996 ¶ 3; Small Claims Compl. No. 793998 ¶ 3. Plaintiff does not indicate the precise legal basis for this claim, but Plaintiff is not required to do so because of the "non-technical" nature of the small claims court complaint form. Cal.Civ.Proc.Code § 116.320(b) (West 2002). The simple pleading requirements, not requiring any additional argument or articulation of legal theory for compensation, is consistent with the small claims court organic statute. Cal.Civ.Proc.Code § 116.120(b) (West 2002) ("[i]n order to resolve minor civil disputes expeditiously, inexpensively, and fairly, it is essential to provide a judicial forum accessible to all parties directly involved in resolving these disputes").

There is nothing on the face of these complaints that asserts a federal claim. In support of its motion for remand, Plaintiff contends that its claims are common counts for quantum meruit or assumpsit. The general pleading of Plaintiff's small claims complaints is consistent with a common count pleading practice. Moreover, the California case law supports Plaintiff's equitable claims for quantum meruit.

■ Under California law, quantum meruit is "an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those

services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entertainment Group, Inc.,* 963 F.2d 1269, 1272 (9th Cir.), *cert. denied, Carolco Television, Inc. v. National Broadcasting Co., Inc.,* 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992), *citing,* B. Witkin, *Summary of California Law: Contracts* § 91 (1987) and 55 Cal. Jur.3d Restitution 360–61 (1980); *see Hahn v. Oregon Physicians' Serv.,* 786 F.2d 1353, 1355 (9th Cir.1985) (applying Oregon law noting that "[t]he purpose of quantum meruit is to prevent unjust enrichment at the expense of another"); *Arrison v. Information Resources, Inc.,* No. C95–3554 THE, 1999 WL 551232, *6 (N.D.Cal. July 16, 1999) ("[t]he underlying idea behind quantum meruit is the law's distaste for unjust enrichment"). Where a party has received a benefit which the party may not justly retain and the parties have no actual express contract covering compensation, for reasons of justice the law will imply a contract to pay for services rendered. *See Iverson, Yoakum, Papiano & Hatch v. Berwald,* 76 Cal.App.4th 990, 996, 90 Cal. Rptr.2d 665 (1999); *Maglica v. Maglica,* 66 Cal.App.4th 442, 449, 78 Cal.Rptr.2d 101 (1998).

 To establish a claim for quantum meruit, the plaintiff must prove that: [1] the plaintiff rendered services to the defendant's benefit; and [2] the defendant would be unjustly enriched if the plaintiff was not compensated. *Arrison,* 1999 WL 551232, at *6, *citing, De Laurentiis,* 963 F.2d at 1272. The claim applies especially where the defendant acquires the benefit with knowledge of the circumstances establishing unjust enrichment. *First Nationwide Savings v. Perry,* 11 Cal.App.4th 1657, 1663–64, 15 Cal.Rptr.2d 173 (1992). The plaintiff and a defendant need not be in contractual privity with each other; the plaintiff may recover on a quantum meruit theory from any other party even though no express or implied contractual relation-

ship exists. *See De Laurentiis,* 963 F.2d at 1273, *citing, Kossian v. American National Ins. Co.,* 254 Cal.App.2d 647, 649–50, 62 Cal.Rptr. 225 (1967) (allowing recovery under quantum meruit where no implied contact existed and the plaintiff did not expect compensation from the current defendant, but a third-party). A defendant's expectation to compensate for a received benefit is not necessary, but compensation must be "expected" by a plaintiff "only in the sense that the services rendered must not have been intended to be gratuitous." *Id.* at 1272–73.

The criteria for quantum meruit are facially satisfied here. To the extent "dial-around" calls are made through Defendant's network from Plaintiff's payphones, Defendant obtains the benefit of Plaintiff's services without paying for them. While Defendant has the option of blocking calls from Plaintiff's payphones over Defendant's network, Defendant has chosen to receive "dial-around" calls from Plaintiff's payphones. Thus, it has acquired benefits conferred by Plaintiff with full knowledge of the circumstances. Plaintiff's income depends on compensation from its payphones. The services rendered to Defendant were not intended to be gratuitous, as evidenced by the invoices Plaintiff has sent to Defendant. Plaintiff's Mot. for Remand, p. 6, ln. 3–4. Defendant would be unjustly enriched if it paid Plaintiff nothing out of the compensation it received for dial-around calls which were made possible by the use of Plaintiff's payphones.

The small claims here asserts a facially valid claim for quantum meruit.

## V. ARTFUL PLEADING AND SUBSTANTIAL FEDERAL QUESTION DOCTRINES

 There are limited circumstances in which the Court can delve beyond the face of the state court complaint and find federal question jurisdiction. Un-

der the "artful pleading" doctrine, the court under some circumstances may re-characterize a plaintiff's state law claim as a federal claim. *Hunter,* 746 F.2d at 640. However, the doctrine is to be invoked "only in exceptional circumstances," *Salveson v. Western States Bankcard Association,* 731 F.2d 1423, 1427 (9th Cir.1984), and such recharacterization is proper where federal law: (1) completely pre-empts state law and (2) confers a federal remedy. *ARCO Environmental Remediation, LLC v. Dept. of Health and Environmental Quality of Montana,* 213 F.3d 1108, 1114 (9th Cir.2000); *Utley v. Varian Associates, Inc.,* 811 F.2d 1279, 1287 (9th Cir.), *cert. denied,* 484 U.S. 824, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987); *Hunter,* 746 F.2d at 642–44.

Moreover, a claim which facially appears to be based on state law may be deemed to "arise under" federal law where "some substantial, disputed question of federal law is a necessary element of one of the well pleaded state claims...." *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. 2841; *Rains v. Criterion Systems, Inc.,* 80 F.3d 339, 345 (9th Cir.1996); *ARCO Environmental,* 213 F.3d at 1116;[2] *Utley,* 811 F.2d at 1283.

The existence *vel non* of a private right of action informs the applicability of both exceptions to the well-pleaded complaint rule. In the context of complete pre-emption, the Ninth Circuit has held that "the artful pleading doctrine applies only when federal law not only displaces state law but also confers a federal remedy." *Hunter,* 746 F.2d at 642. If there is no federal cause of action, "recharacterization of the plaintiff's state law claim as a federal claim is doctrinally impossible." *Utley,* 811 F.2d at 1287. Under the substantial federal question doctrine, the absence of a federal right of action implies the federal element is "insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow,* 478 U.S. at 814, 106 S.Ct. 3229, *cited in, Rains,* 80 F.3d at 347 n. 10. The rationale in *Merrell Dow* is that "to permit removal based on a federal statute not conferring a private right of action would disregard the will of Congress to preclude a private remedy in federal court for the statute's violation." *Utley,* 811 F.2d at 1283.

### A. *Private Right of Action*

Thus, as a threshold matter the Court must address whether there is a private right of action to compel the payment of dial-around compensation provided by 47 C.F.R. § 64.1300(a) and authorized by 47 U.S.C. § 276(b)(1)(A). Lower courts are split on this question.[3]

2. In *ARCO Environmental, supra,* the Ninth Circuit also stated as an additional basis for federal jurisdiction in cases "where the claim is necessarily federal in character." *ARCO Environmental,* 213 F.3d at 1114, *citing, Brennan v. Southwest Airlines Co.,* 134 F.3d 1405, 1409 (9th Cir.), *amended by,* 140 F.3d 849 (9th Cir.1998). *Brennan* involved application of the artful pleading doctrine where "the defendant has a federal preemption defense to a state claim and federal law provides a remedy." *Brennan,* 134 F.3d at 1409 (citation omitted). It thus appears indistinguishable from the "complete preemption" doctrine.

3. Both parties have submitted as exhibits a number of unpublished district court decisions on this issue. Although these decisions lack precedential effect, the Court recognizes that trial courts are widely split on this issue. *Compare Wolfe v. Global Crossing Telecomm., Inc.,* CV 01–0881, 882, 883 TJH; CV 01–03454 TJH (C.D.Cal. July 25, 2001) (private rights of action); *Wolfe v. Qwest Communications Corp.,* CV 01–05554, 05555, 05556, 05557(TJH) (C.D. Cal Dec. 17, 2001) (accord); *PBS Telecom, Inc. v. Qwest Communications Corp.,* No. CV01–7285 RMT (C.D.Cal. Jan. 16, 2002) (accord); and *Bay Dist. Service, Inc. v. Qwest Communications Corp.,* No. C01–20940 RMW (N.D.Cal. Jan. 29, 2002) (accord), with *Precision Pay Phones v. Global Crossing Telecomm., Inc.,* No. C01–02901 WHA, 2001 WL 1456766, *1 (N.D.Cal. Nov.6, 2001) (no private right of action) and *Precision Pay Phones*

While the issue is debatable, the Court concludes that PSPs may bring a private right of action against IXCs to collect dial-around compensation. The starting point is authorizing statute which mandates compensation to PSPs, 47 U.S.C. § 276(b)(1). As noted above, the statute explicitly directs the FCC to prescribe regulations to establish a per call compensation plan "to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone." 47 U.S.C. § 276(b)(1)(A). The statute was intended to address, *inter alia*, the difficulty PSPs had in recovering compensation from IXCs for dial-around calls. *Illinois Public Telecommunications*, 117 F.3d at 558–59.

While § 276 does not address enforcement through a private right of action, § 207 of the same chapter does. Section 207 provides:

"Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission ... or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States ..."

Moreover, § 206 provides:

In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

Thus, §§ 206 and 207 permit suits in federal court to enforce rights under § 276.

Defendant argues that the private right of action conferred by §§ 206 and 207 applies only to enforcement of the Telecommunications Act itself and not the regulations promulgated thereunder. While some district courts have so concluded,[4] the Supreme Court's recent decision in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) compels a contrary result. In *Alexander*, the Court addressed the question whether there was a private right of action to enforce regulations promulgated under § 602 of Title VI of the Civil Rights Act of 1964. Section 601 of Title VI prohibits recipients of federal funds from engaging in racial or national origin discrimination. Section 601 has been interpreted to prohibit only intentional discrimination. Section 601 has also been interpreted to provide a private right of action. Section 602 of Title VI authorizes federal agencies to promulgate regulations to effectuate § 601. The regulations at issue in *Alexander*, promulgated under § 602, prohibit recipients of federal funds from engaging facially neutral practices which have a disparate impact, thus going beyond the substantive provisions of § 601 which reaches only intentional discrimination. The Court held that the disparate impact regulations under § 602 could not be enforced by a private right of

---

*v. Qwest Communications Corp.*, C02–00201 SBA (N.D.Cal. May 16, 2002) (accord).

**4.** *See, e.g., Precision Pay Phones v. Global Crossing Telecomm., Inc.*, 2001 WL 1456766, at *1; *Precision Pay Phones v. Qwest Communications Corp.*, C02–00201 SBA (N.D.Cal. May 16, 2002) (unpublished court order); *cf. Conboy v. AT & T Corp.*, 84 F.Supp.2d 492, 500 (S.D.N.Y.2000).

action. *Alexander*, 532 U.S. at 282, 121 S.Ct. 1511. While the *Alexander* Court refused to imply a private right to enforce the disparate impact regulations, its analysis compels a contrary result here for several reasons.

First, in contrast to the disparate impact regulations of § 602, the Court held that the private right of action to enforce § 601's prohibition on intentional discrimination did apply equally to regulations applying § 601's ban on intentional discrimination. *Id.* at 284, 121 S.Ct. 1511. Because those regulations did not substantively expand § 601 but simply interpreted and implemented it, the Court stated "it is therefore meaningless to talk about a separate cause of action to enforce the regulations apart from the statute." *Id.* The same is true with 47 U.S.C. § 276(b)(1)(A) and 47 C.F.R. § 64.1300(a). The Telecommunications Act mandates that PSPs be "fairly compensated" and directs the FCC to establish the per call compensation plan. Title 47 C.F.R. § 64.1300(a) implements the Congressional mandate embodied in the statute through powers expressly delegated to the FCC.[5] As with the § 601 regulation in *Alexander*, these FCC regulations contrast with the § 602 disparate impact which did not simply fill in interstices left by the statute, but created a substantive standard which differed from the statute. Like the § 601 intentional discrimination regulations, "it is meaningless to talk about a separate cause of action to enforce" the FCC regulation at 47 C.F.R. § 64.1300 apart its authorizing statute, 47 U.S.C. § 276(b)(1)(A). A suit to enforce the right of PSPs under § 276(b)(1)(A) to be "fairly compensated" would be meaningless without the FCC

regulation which specifies the precise level of that compensation. Accordingly, *Alexander*, the right of action conferred under §§ 206 and 207 applies not only to the Telecommunications Act, but to implementing the FCC regulations as well.

Second, even if the FCC regulation were deemed a separate and independent regulation for which a separate private right of action must be found, the analytical framework of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), suggests it would be appropriate to find such a right here. The touchstone to this determination is the text of the statute and Congress' intent. *Alexander*, 532 U.S. at 288, 121 S.Ct. 1511. In contrast to § 602 of Title VI which contained no "rights-creating language" and did not focus on the individuals protected—focusing instead solely on the agencies that did the regulating— § 276(b)(1) mandates that PSPs be "fairly compensated" under a per-call compensation plan to be devised by the FCC. It creates a right to fair compensation and focuses specifically on the individuals to be protected—"all payphone service providers." Moreover, whereas § 602 of Title VI specified only agency enforcement and contained "elaborate restrictions" thereon which suggested that Congress intended to provide only one method of enforcement (administrative) to the preclusion of others (private suits), §§ 206 and 207 expressly provide for enforcement through private suits filed in federal court as well as through administrative petitions filed with the FCC. Thus, there is nothing from the structure or purpose of the statute which would indicate a legislative intent to preclude a private right of action.

For these reasons, the Court concludes that PSPs may bring a federal suit to enforce their compensation rights for dial-around calls against IXCs.[6]

---

**5.** Regulations promulgated pursuant to an express delegation of authority by the legislature have traditionally warranted the highest level of judicial deference. *See* 1 Richard J. Pierce, Jr., Administrative Law Treatise, § 6.4, at 329–31 (4th ed.2002).

**6.** The analysis applicable under *Alexander, supra*, does not necessarily imply that all FCC

## B. *Complete Preemption*

 Notwithstanding the Court finding of a private right of action, the "artful pleading" doctrine requires an additional element that is missing here—"complete preemption" by federal law. As noted above, federal defenses to a state claim does not create "arising under" jurisdiction under § 1331. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425. That applies to traditional preemption defenses. *Toumajian v. Frailey*, 135 F.3d 648, 655 (9th Cir.1998). Federal jurisdiction is created only where there is "complete preemption"—"the rare instances where Congress has chosen to regulate the entire field." *ARCO Environmental*, 213 F.3d at 1114. In those contexts, "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425, *quoting Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The Court has found such complete preemption in the context of § 301 of the Labor Relations Management Act (LMRA), codified at 29 U.S.C. § 185, and certain portions of the Employee Retirement Income Security Act (ERISA), codified at 29 U.S.C. § 1332(a). *See Avco Corp. v. Aero Lodge No. 735, International Assn' of Machinists and Aerospace Workers*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (LMRA); *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. 1542 (ERISA). There is no "complete preemption" where the federal law only preempts state law inconsistent with it. *Rains*, 80 F.3d at 345 (determining that Title VII only preempts inconsistent state law and does not completely preempt state law).

While "[t]here does not appear to be any Ninth Circuit authority finding that the [Telecommunications Act] either does or does not 'completely preempt' state law claims ... the weight of authority, as well as more consistent reasoning, supports a finding that it does not." *Braco v. MCI Worldcom Communications, Inc.*, 138 F.Supp.2d 1260, 1269 (C.D.Cal.2001); *see Heichman v. American Tel. & Tel. Co.*, 943 F.Supp. 1212, 1222 (C.D.Cal.1995) (finding that the Telecommunications Act did not transform the plaintiff's state law causes of action into a federal cause of action); *Boyle v. MTV Networks*, 766 F.Supp. 809, 816 (N.D.Cal.1991) (finding that neither the Telecommunications Act's statutory language nor its legislative history supports the proposition that Congress intended complete preemption); *see Quayle v. MCI Worldcom., Inc.*, No. C00–3694 SC, 2001 WL 1329594, **2–3 (N.D.Cal. Oct.22, 2001).

The Court concludes, the Telecommunications Act does not have the necessary preemptive force to warrant complete preemption. The crucial provision is 47 U.S.C. § 276(c) which provides, "[t]o the extent that any State requirements are inconsistent with the Commission's regulations, the Commission's regulations on such matters shall preempt such State requirements." As with Title VII, preemption is limited to inconsistent state law.[7] Thus, *Rains, supra*, is dispositive—there is no "complete preemption." That conclu-

---

regulations promulgated under the Telecommunications Act are enforceable by private suits. *Alexander* requires an examination into the nature of the relationship between the regulation in question and the authorizing statute. *Alexander*, 532 U.S. at 284, 121 S.Ct. 1511. If there is a meaningful distinction such that the right to enforce the regulation warrants separate analysis from enforcement of the statute, then a court must apply the

*Cort v. Ash, supra*, analysis to the regulation. Because each regulation must be examined separately, this Court's conclusion is not necessarily inconsistent with *Conboy, supra*, which involved different FCC regulations.

7. This language is parallel to the narrower branch of traditional preemption recognized by the courts—"conflict preemption"—where "compliance with both federal and state regu-

sion is bolstered by the fact that 47 U.S.C. § 414 contains a savings clause which provides that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." Clearly, § 414 is intended to preserve state law to the extent feasible. Thus, while the § 276(b)(1)(A) of the Telecommunications Act may be enforced by a suit in federal court, there is nothing to suggest Congress intended this mode of enforcement to be to the exclusion of claims in state courts. As demonstrated by the limited scope of the preemption provision of § 276(c) and the savings clause of § 414, state court enforcement was not of such "central concern to the federal statute," *Franchise Tax Board*, 463 U.S. at 25–26, 103 S.Ct. 2841, so as to evince Congress' intent to completely displace state court jurisdiction over suits to collect dial-around compensation.

Accordingly, the "artful pleading" doctrine requiring "complete preemption" does not apply.

### C. *Substantial Federal Question*

■■■ Even where state law creates the plaintiff's cause of action, the case may be deemed to "arise under" federal law "if the right to relief under" state law "requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. 2841; *see ARCO Environmental*, 213 F.3d at 1116; *Rains*, 80 F.3d at 345. The existence of a requisite "substantial federal question" has proven elusive to a bright

line determination due in part to the fact that "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Franchise Tax Board*, 463 U.S. at 8, 103 S.Ct. 2841.

■■■ Examination of a substantial federal question has arisen in a variety of contexts in which state and federal law are intermingled. *See, e.g., Merrell Dow, supra* (violation of Federal Food, Drug and Cosmetic Act alleged to constitute rebuttable presumption of negligence); *Franchise Tax Board, supra* (state sought to levy against money held in retirement trust fund regulated by ERISA); *Moore v. Chesapeake & O. Ry. Co.*, 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934) (state law limited defenses of contributory negligence and assumption of risk where employer violated FELA); *Rains, supra* (Title VII asserted as public policy in claim for wrongful termination in violation of public policy); *Hunter, supra* (state law bad faith claim required colorable contract claim based on federal law). As these cases illustrate, the fact that a case may turn in part upon the resolution of some issue of federal law or that federal law constitutes an ingredient of the state law claim for relief does not automatically convert a state claim into one "arising under" federal law for purposes of federal question jurisdiction. Rather, the court must examine the centrality of the federal law to the claim and consider policy factors. "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the

lations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). This nar-

row branch of preemption contrasts with "field preemption" where Congress intends federal law to "occupy the field" to the general exclusion of state law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); *see English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

law in its treatment of causation … a selective process which picks the substantial causes our of the web and lays the other ones aside." *Franchise Tax Board,* 463 U.S. at 20, 103 S.Ct. 2841, *quoting, Gully v. First National Bank,* 299 U.S. 109, 117–18, 57 S.Ct. 96, 81 L.Ed. 70 (1936).

The evaluation of the importance of the federal issue to the state claim has been stated variously. As discussed in *Hunter, supra,* courts have stated that the federal element in a claim must be "direct and essential as opposed to attenuated," "basic as opposed to collateral," "necessary as opposed to merely possible," "pivotal," "substantial as opposed to merely incidental" or "paramount as opposed to collateral." *Hunter,* 746 F.2d at 646 (internal quotations omitted). The fact that the state claim "hinges on" federal law is not, in and of itself, sufficient. *Id.* at 645–46. In *Hunter,* the court held that the fact that the federal element determined as a preliminary matter whether the state law duty of good faith applied was insufficient. *Id.* at 646. Just as the creation property rights through federal land patents, trademarks and copyrights has been held not to transform state law actions to enforce contract and property rights into federal claims, the federal element in *Hunter* (contract claim based on federal law) was deemed to be involved only "incidentally;" the bad faith count "fundamentally asserts [state] claims." *Id.* at 647 (quotations omitted). Similarly, in *Moore, supra,* and *Merrell Dow, supra,* "the violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of the action." *Merrell Dow,* 478 U.S. at 814 n. 12, 106 S.Ct. 3229, *citing, Moore,* 291 U.S. at 216–17, 54 S.Ct. 402.

In the case at bar, the state claim for quantum meruit exists independent of the right of action under 47 U.S.C. § 276(b)(1)(A). The only involvement of federal law is the FCC regulation (47 C.F.R. § 64.1300(c)) which sets the default per call compensation level in the absence of a contractual agreement between the PSP and the IXC. The establishment of a default per call rate touches the state claim "at a single point," *Moore,* 291 U.S. at 216, 54 S.Ct. 402, and does not "fundamentally change" the nature of the state law equitable claim asserted by Plaintiff herein. Had the FCC regulation not set a default rate, Plaintiff would be free to prove under state law the value of the service provided to, and which benefitted, Defendant.

Finally, considerations of policy and common sense further counsel against finding federal jurisdiction over Plaintiff's small claims counts. "[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow,* 478 U.S. at 810, 106 S.Ct. 3229. The analysis must be informed by "the demands of reason and coherence, and the dictates of sound judicial policy." *Id.* The cases at bar were initiated by a small independent PSP as a pro se small claims suit to collect $1,828.14 and $2,055.63. The effect of the removal petition filed by Defendant (apparently not an isolated tactic among IXCs as indicated by the number of other similar cases which have addressed removal jurisdiction) is to haul the small claims plaintiff into federal court, turning a simple collection suit into a federal case which is far more costly and complicated to litigate.[8] Nothing in the

---

**8.** The facts of this case illustrate how removal can represent a costly trap for the unwary. Defendant objected to the appearance of Joe

Lisha before the Court pro se, because his business, Precision Pay Phones, was a partnership which cannot appear before the Court

letter of the Telecommunications Act, FCC regulations at issue, or legislative history indicates that the federal law designed to help independent PSPs recover fair compensation is to be construed in such a manner as to deprive them of their choice of the most efficient and appropriate forum. Indeed, permitting removal to federal court over the objections of independent PSPs as Plaintiff in the instant cases would, if anything, contravene the legislative purpose of § 276(b)(1)(A).

Moreover, this case does not require the "resolution of a substantial, disputed federal question." *ARCO Environmental*, 213 F.3d at 1114. The federal ingredient involved here—the setting of the per call dial-around rate in the absence of a contract—requires no interpretation of federal law.[9] Hence, there is no compelling need for a federal forum to *e.g.* facilitate national uniformity in the interpretation or application of federal law. *Cf. Textile Workers v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (determining that uniform federal law and policy should be applied under the LMRA). Nor is there any reason to expect that federal courts possess greater expertise than state courts in applying the dial-around rate set by FCC regulation.

In short, the Court "cannot identify any compelling reasons of federal judicial policy for embracing a case of this kind as a federal question case.... [The California Superior Courts] are fully competent" to apply the applicable federal law here.

*Merrell Dow*, 478 U.S. at 814, 106 S.Ct. 3229, *quoting, Kravitz v. Homeowners Warranty Corp.*, 542 F.Supp. 317, 319 (E.D.Pa.1982).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's claims in the cases at bar do not give rise to federal jurisdiction of this Court. Accordingly, the Court **GRANTS** Plaintiff's motions to remand. The above-captioned cases are hereby remanded to the Superior Court for San Francisco, Small Claims Division.

However, on May 30, 2002, Defendant filed a Motion for Transfer, under 28 U.S.C. § 1407, before the Judicial Panel on Multidistrict Litigation. As such, this Order is hereby stayed pending the Judicial Panel on Multidistrict Litigation's ruling on the motion.

IT IS SO ORDERED.

---

without counsel. *See* Civil L.R. 3–9(b) (stating that corporations, unincorporated associations, partnerships, etc., "may appear only through a member of the bar of the Court"). Lisha was then compelled to represent he would restructure Precision Pay Phones into a sole proprietorship. Defendant accepted Lisha's representation as did the Court. Only with acceptance of that business change was Lisha permitted to proceed pro se. *See National Independent Theatre Exhibitors, Inc. v.*

*Buena Vista Distribution Co.*, 748 F.2d 602, 609–10 (11th Cir.1984) (noting that pursuant to 28 U.S.C. § 1654, a sole proprietor could appear in federal court pro se).

9. Certainly, there is no basis for presuming that every collection suit in state court in which the price or rate is affected by some federal regulation gives rise to a federal question.